# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 05-10113-DPW

### UNITED STATES OF AMERICA

### V.

### REYLANDO REYES,
a/k/a REYLANDO RISE,
a/k/a REYNALDO RISE,
a/k/a RAYNALDO RISE,
a/k/a RAY RISE,
a/k/a RAYLANDO RISE,

## ORDER ON DETENTION

ALEXANDER, M.J.

The defendant, Reylando Reyes, appeared before this Court on May 17, 2005, for a detention hearing pursuant to an indictment charging him with a violation of 18 U.S.C. § 922(g)(1) (felon in possession of ammunition).  At the hearing, the government was represented by Assistant United States Attorney Antoinette E. M. Leoney and Mr. Reyes was represented by Elliot M. Weinstein. The government moved to detain Mr. Reyes pursuant to 18 U.S.C. §§ 3142 (f)(1)(A) (crime of violence), (f)(1)(B) (maximum sentence of life imprisonment or death), (f)(1)(D) (prior felony convictions), and (f)(2)(A)(serious risk of flight).

In that an indictment is extant, probable cause exists to believe that Mr. Reyes committed the offense with which he is charged.  United States v. Vargas, 804 F.2d 157, 162-63 (1st Cir. 1986).  At the May 17 detention hearing, therefore, the Court heard testimony and arguments from the government and Mr. Reyes only on the matter of detention.  The Court now orders that Mr. Reyes be DETAINED because, as more fully described below, no condition or combination of conditions will reasonably assure the safety of any other person and the community.

In support of its motion for detention, the government offered the credible testimony of Special Agent Lisa A. Rudnicki, a nine-year veteran of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), as well as documentary evidence.  The Court was also aided by a Pretrial Services Report ("PTS Report").  Agent Rudnicki's credible testimony includes the averments set forth below.

On February 27, 2005, at 2:30 p.m., two Boston police officers routinely patrolling the area of Harvard and Bernard Streets in Dorchester, Massachusetts, noticed Mr. Reyes sitting in the driver's seat of a parked Ford Taurus.  The officers knew Mr. Reyes from their own previous experience as well as from the experience of other officers with whom they worked.  The officers ran a query on Mr. Reyes's license status and determined that Mr. Reyes's license had been revoked.

2

The officers then saw Mr. Reyes start his car and drive away, and they subsequently effectuated a standard motor vehicle stop. The officers asked Mr. Reyes for his license, at which time Mr. Reyes confirmed he did not have one because it had been suspended. The officers then asked Mr. Reyes if he had any contraband, and he answered that he had "weed" in his pants pocket. After the officers asked Mr. Reyes to step out of the car, they felt his pockets to find the marijuana and instead found what was determined to be a bullet in the button-up left pocket of his jeans. When Mr. Reyes realized what the officers had found, he made a comment to the effect of "I just found that in front of my house. I forgot about it."

The officer immediately handcuffed Mr. Reyes and asked him again where the marijuana was located. Mr. Reyes was wearing sweat pants under his jeans at the time and said the marijuana was in his sweat pants. The officers then found a plastic bag that they believed to contain marijuana, as well as two plastic bags containing a tan substance believed to be crack-cocaine in Mr. Reyes's sweat pants pocket.

The officers also found a composition notebook with names, cellular telephone numbers and dollar signs next to the names. Additionally, they recovered a cellular telephone and $548 in cash and a handcuff key in Mr. Reyes's

wallet.  Mr. Reyes was placed under arrest for unlawful possession of ammunition,

possession of Class B and Class D narcotics, operating a motor vehicle after

license revocation, and use without authority.  Mr. Reyes was subsequently

indicted on the federal charge of being a felon in possession of ammunition in

violation of 18 U.S.C. § 922(g)(1), and the state has since dropped its charges

against Mr. Reyes in favor of prosecuting the federal charge.

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal

defendant pending trial upon a determination that "no condition or combination of

conditions will reasonably assure the appearance of the person as required and the

safety of any other person and the community. . . ." 18 U.S.C. § 3142 (e); United

States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990).  "With regard to risk of

flight as a basis for detention, the Government must prove by a preponderance of

the evidence that no combination of conditions will reasonably assure the

defendant's appearance at future court proceedings."  United States v.  DiGiacomo,

746 F. Supp. 1176, 1180-81 (D. Mass. 1990).  The burden of persuasion remains

with the Government on the question of flight risk.  See DiGiacomo, 746 F. Supp.

at 1181 (citing United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985)).

The issue of whether the defendant poses a danger to the community has a

different requirement.  The Government must prove by clear and convincing

evidence that no combination of conditions will reasonably assure the safety of any other person and the community.  United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).  The meaning of clear and convincing evidence does not imply that the judge be "plumb sure" that there is no set of conditions that will protect the public, but the judge should be "pretty sure."  United States v. Gray, 651 F. Supp. 432 (W.D. Ark. 1987), aff'd, 855 F.2d 858 (8th Cir.), cert. denied, 488 U.S. 866 (1988).

The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. §3142(g).  Pursuant to Section 3142(g), the Court first looks to the nature and circumstances of the offense charged against Mr. Reyes. This Court has routinely held that the unlawful possession of a firearm by a felon is, while a violation of the law, not a crime of violence for purposes of pretrial detention pursuant to the Bail Reform Act.  United States v. Silva, 133 F. Supp. 2d. 104, 109-10 (D. Mass. 2001); United States v. Powell, 813 F. Supp. 903, 906-09 (D. Mass. 1992).  If a felon in possession of a firearm does not constitute a crime of violence for purposes of pretrial detention, then a felon in possession of ammunition, a step removed from possessing a firearm,  simply cannot, in this Court's estimation, be a crime of violence.

The government cites two cases, neither from this District, in which courts have held that a felon in possession of ammunition alone may be a crime of

5

violence, <u>United States v. Le</u>, No. 03-10051-01, 2003 WL 21659657 (D. Kan. Apr.
10, 2003) and <u>United States v. Carswell</u>, 144 F. Supp. 2d 123 (N.D.N.Y. 2001).  In
both <u>Le</u> and <u>Carswell</u>, circumstances that led to the felon in possession of
ammunition charges played a significant role in the Courts' holdings that the
charge constitutes a crime of violence.  <u>Le</u>, 2003 WL 21659657, at * 2; <u>Carswell</u>,
144 F. Supp. 2d at 132-33.

The charge against the defendant in <u>Le</u> stemmed from a burglary, which
itself is a crime of violence, and the Court held that while the felon in possession of
ammunition charge

> may or may not constitute a crime of violence, the
> Government certainly established the likelihood of a
> connection between the charged offense and the burglary
> . . . .  Accordingly, the Government was entitle to
> demand a detention hearing because this case *involves* a
> crime of violence.  18 U.S.C. § 3142 (f)(1)(A).

<u>Le</u>, 2003 WL 21659657, at *2.  The <u>Carswell</u> Court similarly considered the
context in which the felon in possession of ammunition charge arose:

> A federal grand jury determined that there was probable
> cause to believe that Carswell possessed a shotgun shell.
> In turn, the court found that at the time he possessed that
> shell, he used it in a shotgun to fire through an apartment
> door . . . under circumstances where he could easily have
> killed Shermell Sherman.

6

<u>Carswell</u>, 144 F. Supp. 2d at 131.  The defendant's "possession of a shotgun shell gave rise to the viable risk that he would use it in a shotgun to commit a crime which is exactly what he did."  <u>Id.</u> at 132.

Those cases differ markedly from that of Mr. Reyes, who at the time of his arrest, as far as this Court is aware, was not otherwise involved in a crime of violence as defined by the Bail Reform Act, and this Court does not find the government's averments otherwise compelling.

Having concluded that a felon in possession of ammunition is not a crime of violence for purposes of detention, the Court continues with its analysis pursuant to § 3142(g).  The next step is to consider the weight of the evidence against Mr. Reyes.  As noted previously, there is probable cause to believe that the defendant committed the offenses with which he is charged.  <u>Vargas</u>, 804 F.2d at 162-63.


The Court's third inquiry relates to the individual defendant, and the history and characteristics of Mr. Reyes are of paramount importance here.  Although the Court will not detain Mr. Reyes on the basis that he is charged with a crime of violence, his danger to the community is still of serious concern to this Court. Most critically, Mr. Reyes has a criminal history that includes multiple convictions for such crimes as assault and battery with a dangerous weapon and substance act

7

violations.  His record is prodigious.  The government also proferred, during the detention hearing, that when Mr. Reyes was arrested on the current charges, while at Dorchester District Court, he had a four-inch plastic blade knife with a jagged edge on his person.  Such incidents demonstrate a risk to the community posed by releasing the defendant.

Defense counsel averred that Mr. Reyes does not pose a risk of flight, and this Court is inclined to agree.  According to the PTS Report, Mr. Reyes was born and raised in Boston, does not possess a passport, and has not traveled outside of the United States.  Furthermore, he has resided for the last twenty-five years in Dorchester, in a home owned by his grandmother.  His father lives there as well, and Mr. Reyes also has two children residing in the Boston area.  Mr. Reyes's ties to the community, however, have not stopped him from repeatedly committing crimes in the past, and the Court thus remains gravely concerned about Mr. Reyes dangerousness.

After considering all evidence before the Court, and the presumption of 18 U.S.C. § 3142(e-f), the Court concludes by a preponderance of the evidence that REYLANDO REYES poses a serious risk to the safety of the community that cannot be vitiated by any condition or combination of conditions of release.

Accordingly, the Court ORDERS him detained pending trial. Further, pursuant to

18 U.S.C. §3142 (i) it is ORDERED that:

1.    The defendant be, and hereby is, committed to the Custody of the Attorney
      General for confinement in a corrections facility, separate, to the extent
      practicable, from persons awaiting or serving sentences or being held in
      custody pending appeal;

2.    The defendant be afforded reasonable opportunity for private consultation
      with his counsel; and

3.    On order of a court of the United States or on request of an attorney for the
      government, the person in charge of the corrections facility(s) in which the
      defendant is confined shall deliver the defendant to an authorized Deputy
      United States Marshal for the purpose of any appearance in connection with
      a court proceeding.

      Review of this Order may be obtained by Mr. Reyes's filing of a motion for

revocation or amendment pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.


6/30/05                              /S/ Joyce London Alexander
Date                                 United States Magistrate Judge

9