

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*



| | |
|---|---|
| *Main Reception: (617) 748-3100* | *United States Courthouse, Suite 9200*<br>*1 Courthouse Way*<br>*Boston, Massachusetts 02210* |

January 31, 2006

**BY HAND**
Stylianus Sinnis, Esq.
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02210

    Re:  United States v. Reylando Reyes,
          a/k/a Reylando Rise, a/k/a Raynaldo Rise,
          a/k/a Raylando Rise, a/k/a Ray Rise
          Criminal No. 05-10113-DPW

Dear Attorney Sinnis:

    Pursuant to Local Rules 116.3(A), the government hereby responds to your discovery letter request of December 23, 2005, in the order presented in your letter.

1.    <u>Statements of the Defendant</u>

    In addition to her formal report of investigation, SA Lisa Rudnicki made written notes relative to certain alleged statements made by the defendant following his arrest on the federal criminal complaint on 4/26/05. You have already been provided with her formal report of investigation. (See Bates No. 104 - 106). Enclosed herein, please also find a copy of SA Rudnicki's written notes in this regard, as well as her notes of the interview she conducted of Latoya Gaci. (See Bates No. 224 - 225).

    Please be advised that neither Officer Cogavin nor Officer Laham made written notes regarding the defendant's alleged statements that he "just found that [the bullet] in front of my house. I forgot about it."

2.  Documents and Objects

   A.  Officers Laham and Cogavin know the defendant from personal contact and interaction with him while on patrol in District and from other officers. The officers are also aware of and familiar with most, if not all, of the prominent "players," including the defendant, in their patrol area. The officers maintain their own book of these individuals, which they keep in their patrol car. They also meet regularly with other officers in the course of their formal duties to discuss the prominent "players" in the area.

   Officers Laham and Cogavin had not received any information from "other officers" regarding the defendant prior to stopping the defendant's motor vehicle for a revoked license and his subsequent arrest on 2/27/05. Notwithstanding the above, as for any other information that these officers may have received over the course of time "from fellow officers," the government declines to respond on the grounds that said request is overly broad.

   The Incident Reports and the Field Interrogation Observation Reports ("FIOs") that have already been produced to you are a complete record.

   C.  Other than the Cad Sheet Printout (Bates No. 013 - 015), there are no other documents that reflect that Officers Laham and/or Cogavin ran a query of Mr. Reyes' driver's license with the Registry of Motor Vehicles prior to stopping the car he was in on 2/27/05. It's my understanding from the officers, that when a motor vehicle query is made from the police patrol car to the Registry of Motor Vehicles, the officers do not receive a printout of the results, rather the officers are able to view the results that are posted on the computer screen.

   However, the Ch. 3 turret tape (Bates No. 223) that was previously produced, clearly indicates that the officers had checked and learned that the defendant's license had been revoked at the time they stopped him. Additionally, records that were subsequently obtained from the Registry of Motor Vehicles (Bates No. 130 - 135) that was previously produced, clearly shows that the defendant's license was revoked at the time the officers stopped his vehicle on 2/27/05.

   D.  Enclosed herein, please find copies of the pages of composition notebook that was allegedly seized from the defendant at the time of his arrest. (Bates No. 226 - 227). As you know, the notebook is presently being held as evidence at the Boston Police Department. Although I believe that the enclosed notebook

pages are complete, you will have an opportunity to confirm this when you examine the notebook on 2/2/06 when we travel to Boston Police Headquarters to view all of the evidence. I have also enclosed a copy of the "Cellular & Paging" Invoice that was also recovered from the defendant at the time of his arrest. (Bates No. 228).

   E.   Enclosed herein, please find a copy of the Boston Police evidence logs associated with the evidence seized from the defendant (including the bullet, cell phone and notebook) at the time of his arrest. (Bates No. 229 - 234). You will notice that the evidence logs are somewhat confusing, as they list the names of multiple arrestees, including this defendant. I'm told that this happens when officers have not properly logged off the computer system.

   I have also enclosed a copy of the Boston Police seized money form relative to the $548 seized from the defendant at the time of his arrest. (Bates No. 235). The officers have been unable to locate an inventory for the motor vehicle that the defendant was driving when he was stopped and arrested on 2/27/05.

   F.   The bullet at issue in this case has been determined by SA Phillip Ball to have been manufactured outside of the Commonwealth of Massachusetts. In fact, it's my understanding that no ammunition is presently manufactured in Massachusetts. However, I have not yet been able to confirm for you the specific origin [city and state] as to where the bullet was manufactured, but will provide that information, if it exists, as soon as I have received it.

   G.   Please see my discovery letter addressed to you, dated December 22, 2005. In addition, please be advised that the officers cannot locate the signed *Miranda* form executed by the defendant at the time of booking following his arrest.

3.   Reports of Examinations and Tests

   As you know, you are presently scheduled to view all of the evidence in this case on February 2, 2006 at 3:30 p.m., at the Boston Police Headquarters, 1 Schroeder Plaza, Boston.

   Further, enclosed herein, please find Commonwealth of Massachusetts State Laboratory Institute reports, prepared by Assistant Analysts Chukwudi Ifezue and Della Saunders, relative to their examination and analysis of the marijuana on 3/4/05, and the cocaine on 3/23/05, that were recovered from the defendant at the time of his arrest. (Bates No. 236 - 237).

4.  **Exculpatory Evidence**

The government agrees to this request, and states that it will produce any such information, if it exists, fourteen (14) days prior to any suppression hearing and/or trial.

5.  **Expert Witnesses**

The parties have already agreed that the government [and the defendant] will produce such information forty-five days (45) days prior to trial. (See Court Order and Initial Status Report dated November 21, 2005).

Please feel free to contact me if you wish to discuss this case in greater detail.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: *[signature]*
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney

Enclosures
cc:  Deputy Courtroom Clerk
     to the Honorable Joyce London Alexander
     (w/o enclosures)