```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA  )
                          )
     v.                   )       CRIMINAL NO. 05-10113-DPW
                          )
REYLANDO REYES            )
```

DEFENDANT'S MOTION TO SUPPRESS FRUITS
OF ILLEGAL STOP AND SEARCH AND STATEMENTS

Defendant, Reylando Reyes, respectfully moves that this Court suppress from evidence a single bullet, and any other items allegedly seized from his person on February 27, 2005, as well as any statements allegedly made by him that resulted from the unlawful stop and search.

As grounds for this motion, defendant states that the evidence was obtained in violation of his rights under the Fourth and Fifth Amendments to the U.S. Constitution.

Defendant further states:

1. The police directed Mr. Reyes to start and drive a motor vehicle armed with the knowledge that his license to drive had been revoked; thereby creating a crime for the sole purpose of justifying the stop and search of the defendant.

2. It is axiomatic that the Government may not profit by a police officer's choice to create illegal behavior to justify a search and accordingly all fruits of the illegal stop and search must be suppressed. United States v. Curzi, 867 F.2d 36 (1st Cir. 1989) (circumstances deliberately created by the police cannot justify a warrantless search); Wong Sun v. United States, 371 U.S. 471 (1963).

    3.    Statements attributed to Mr. Reyes must be suppressed because they are the fruits of the illegal stop, search, and seizure of the defendant. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984); <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963). In addition, the statements must be suppressed because Mr. Reyes was not advised of his Miranda rights. <u>Miranda v. Arizona</u>, 86 S.Ct. 1602 (1966).

<u>Statement of Relevant Facts</u>[1]

The simplicity of the facts belies the underhandedness of the police conduct in this case. In the late afternoon hours of February 27, 2005 two Boston police officers on routine patrol observed the defendant seated in a parked car. Exhibit A at 1. The officers knew from prior encounters that the person in the car was Reylando Reyes. <u>Id</u>. Believing Mr. Reyes' license might be suspended the officers initiated a query with the Registry of Motor Vehicles. <u>Id</u>. The Registry confirmed that Mr. Reyes' license was revoked. <u>Id</u>. At the time the police received this information the vehicle was not moving or even started. <u>Id</u>. Armed with this information, the officers pulled their police cruiser directly behind the vehicle in which Mr. Reyes was seated and turned the cruisers' lights and siren on. Exhibit C at ¶ 3. At this time the vehicle was neither moving nor started. <u>Id</u>. In direct response to the police ordering Mr. Reyes to move the

---

[1] The facts are taken from the Boston Police Incident Report dated February 27, 2005, attached as Exhibit A; Boston Police Department Report dated March 14, 2005, attached as Exhibit B; Affidavit of Reylando Reyes, attached as Exhibit C.

-2-

vehicle, he put the key in the ignition and drove down the block. Id. The officers followed Mr. Reyes for a short distance then ordered him to stop the vehicle. Id.

Upon stopping the vehicle, the officers asked Mr. Reyes for his license and registration. See Exhibit A. Mr. Reyes informed the officers that his license was suspended. Id. At that point, the officers ordered Mr. Reyes out of the vehicle and placed him in handcuffs for driving with a revoked license. See Exhibit C at ¶ 4. Once handcuffed, the officers proceeded to search Mr. Reyes. According to the police, the search revealed a bag of marijuana, two small bags of crack cocaine, a single bullet, a small notebook pad, a handcuff key, $548 U.S. currency, and a cell phone. See Exhibit A.

While in handcuffs and under arrest for driving with a revoked license, the officers questioned Mr. Reyes. See Exhibit C at ¶ 5. Mr. Reyes had not been read his Miranda warnings. Id. Furthermore, federal agents questioned Mr. Reyes following his arrest on the federal criminal complaint issued in this case. In response, Mr. Reyes made certain statements. Again, he had not received his Miranda warnings at the time of the police questioning. Id. ¶¶ 6-11.

## ARGUMENT

I. THE STOP OF THE MOTOR VEHICLE WAS ILLEGAL AND THE EVIDENCE SEIZED AS A RESULT MUST BE SUPPRESSED.

The Fourth Amendment requires police to have probable cause

to believe a traffic violation has occurred before stopping a vehicle. Whren v. United States, 517 U.S. 806 (1996). Here, the Government relies on the fact that the officers observed Mr. Reyes operate a motor vehicle while his license to do so had been revoked. On its face the stop appears legitimate. However, the legitimacy of the stop is pierced by the fact that the police intentionally and knowingly created the requisite probable cause to stop Mr. Reyes' vehicle. The police armed with the knowledge that Mr. Reyes' license had been revoked ordered him to start the vehicle and drive. In so doing, the police created the criminal conduct used to legitimize the stop of Mr. Reyes. The Government may not now rely on circumstances of their own deliberate invention to support and justify the stop of Mr. Reyes' vehicle and the subsequent search of his person. Curzi, 867 F.2d at 43; United States v. Torres, 274 F.Supp.2d 146 (D. Rhode Island 2003).

In Curzi, the First Circuit held that the volitional acts of law enforcement could not be relied on by the Government to justify a warrantless search pursuant to the exigent circumstances exception to the warrant requirement. In Curzi, the police staked out a home within which were several individuals wanted on various federal charges. Curzi, 867 F. 2d at 37. The surveillance continued undetected for a period of hours. Id. At 38. At the election and the time set by law

enforcement the occupants of the house were ordered to exit the residence and the police subsequently conducted a protective sweep of the residence. Id. The Court held that "calculated predesign" by law enforcement to deliberately create circumstances justifying a warrantless search cannot be sanctioned. Id. at 42-43. See also United States v. Munoz-Guerra, 788 F.2d 295 (5th Cir. 1986)(government could not justify search based upon circumstances of its own making); United States v. Morgan, 743 F.2d 1158, 1163-64 (6th Cir. 1984)(police not free to create circumstances to justify intrusions); United States v. Torres, 274 F. Supp. 2d 146 (D. Rhode Island 2003)(police cannot manufacture circumstances to excuse otherwise unconstitutional search).

Here, the police deliberately, intentionally, and wilfully, ordered Mr. Reyes to move a motor vehicle for the sole purpose of creating illegal behavior to justify a further intrusion and search of Mr. Reyes. Prior to the police instructing Mr. Reyes to move the motor vehicle, the car was neither on nor were the keys in the ignition. In fact, at no time prior to ordering Mr. Reyes to drive the vehicle had the police observed Mr. Reyes operate the motor vehicle. The police would have been well within their duties to surveil Mr. Reyes, wait to see if he operated the vehicle, and then stop him, even if such a stop were

a mere pretext to conduct a search.[2]  They did not.  Rather, they took it upon themselves to create a crime, stop Mr. Reyes for that alleged crime, and to search him.  This they cannot do. Curzi, 867 F. 2d 36.

Accordingly, the stop and search of Mr. Reyes violated the Fourth Amendment, requiring suppression of the evidence seized there from as fruits of an illegal search and the subsequent statements also as a fruit of the illegal seizure.  United States v. Calandra, 414 U.S. 338, 347 (1974); Wong Sun v. United States, 371 U.S. 471 (1963).

II.  STATEMENTS MADE BY THE DEFENDANT WHILE IN CUSTODY ARE INADMISSIBLE AS FRUITS OF AN ILLEGAL SEARCH AND BECAUSE THEY WERE OBTAINED PRIOR TO DEFENDANT BEING INFORMED OF HIS MIRANDA RIGHTS.

Any statements made by Mr. Reyes subsequent to his being illegally seized must be suppressed as fruits of an illegal search and seizure.  Oregon v. Elstad, 470 U.S. 298, 306 (1985).  For the reasons detailed above, this search and seizure violated the Fourth Amendment of the United States Constitution and all evidence flowing from the illegal stop, including the statements must be suppressed.

Moreover, the prosecution may not use statements obtained

---

[2] Police are warranted in stopping a motor vehicle for a valid traffic infraction even if that infraction is not the true reason for the stop.  Whren v. United States, 517 U.S. 806 (1996).  Whren and its progeny all deal with cases in which the police discover circumstances justifying a stop not situations where police create those circumstances.

through custodial interrogation of a defendant unless it demonstrates that the defendant was informed of his right to remain silent, that anything he says can be used against him in court, that he has the right to have a lawyer present during questioning, and that a lawyer will be provided for him if he cannot afford a lawyer. Miranda v. Arizona, 384 U.S. 436 (1966). It is beyond dispute that Mr. Reyes was in custody immediately following the traffic stop on February 27, 2005. According to the police report, immediately after the traffic stop they asked Mr. Reyes for his license. Mr. Reyes responded that he did not have a license. The officers then handcuffed Mr. Reyes and placed him under arrest. He was not informed of his Miranda rights. Subsequent to his arrest, the police questioned Mr. Reyes. The government attributes certain responses to Mr. Reyes. The government may not use these statements unless it demonstrates by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have a lawyer present during questioning. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Additionally, statements made by Mr. Reyes following his arrest on a federal complaint in this case must be suppressed because the questioning happened prior to the officers advising Mr. Reyes of his Miranda warnings. ATF agents arrested Mr. Reyes

at the Dorchester District Court.  While transporting Mr. Reyes to the Federal Courthouse in Boston, the agents questioned Mr. Reyes regarding "why he wore all black" and the circumstances of his arrest.  Mr. Reyes disputes that he was advised of his <u>Miranda</u> rights prior to being questioned.  Therefore, these statements must also be suppressed.[3]

Defendant requests an evidentiary hearing on this motion and reserves his right to assert additional grounds for suppression based upon evidence at the hearing.

REYLANDO REYES
By his attorney,


/s/ Stylianus Sinnis
Stylianus Sinnis
B.B.O. #560148
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Stylianus Sinnis, do hereby certify that this document has been filed electronically and that it will be served electronically to registered ECF participants as identified on the Notice of Electronic Filing (NEF) on March 17, 2006.

/s/ Stylianus Sinnis
Stylianus Sinnis

---

[3] These statements were also obtained in the absence of counsel after the defendant had been appointed counsel; thereby providing further grounds for suppression.  <u>Massiah v. United States</u>, 377 U.S. 201 (1964).

# EXHIBIT A

# BOSTON POLICE
# INCIDENT REPORT

ORIGINAL ☒  SUPPLEMENTARY ☐

| KEY SITUATIONS | COMPLAINT NO. | REPORT DIST. | CLEARANCE DIST |
|---|---|---|---|
| DRUGS OTHERS | 050102626 | B3 | |

| TYPE OF INCIDENT | CRIME CODE | STATUS | DATE OF OCCUR. | B. |
|---|---|---|---|---|
| DRUGS, SCHOOL ZONE | 0 | | A. 02/27/05 | |

| LOCATION OF INCIDENT | APT. | DISPATCH TIME | TIME OF OCCUR. | B. |
|---|---|---|---|---|
| TALBOT AV, COLONIAL AV | | 02:30 PM | A. 02:30 PM | |

| VICTIM-COMP. (LAST, FIRST, MI) | PHONE | SEX | RACE | MARITAL STATUS |
|---|---|---|---|---|
| COMM OF MASS | | | | |

| ADDRESS | APT. | OCCUPATION | AGE | D.O.B. |
|---|---|---|---|---|
| | | | 0 | |

| PERSON REPORTING | ADDRESS | APT. | PHONE |
|---|---|---|---|
| PO'S LAHAM AND COGAVIN | 1165 BLUE HILL AV, DORCHESTER, MA, 02124-0000 | | (617)-343-4700 |

WAS THERE A WITNESS TO THE CRIME

| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | APT. | TELEPHONE | YES ☐ NO ☒ |
|---|---|---|---|---|---|---|---|

NUMBER OF PERPETRATORS: 1 — CAN SUSPECT BE IDENTIFIED AT THIS TIME

| STATUS | NAME (LAST, FIRST, MI) | S.S. NO. | BOOKING NO. | PHOTO NO. | ALIAS | YES ☒ NO ☐ |
|---|---|---|---|---|---|---|
| ARRESTED | RISE, REYLANDO | 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 | 20050052503 | | | |

| WARRANT NO. | ADDRESS | SEX | RACE | AGE | HEIGHT | DOB |
|---|---|---|---|---|---|---|
| | 150 HARVARD ST, DORCHESTER, MA, 02124-0000 | MALE | BLACK NON-HISPANIC | 35 | 6-00 | 5/13/1969 |

| SPECIAL CHARACTERISTICS (INCLUDING CLOTHING) | WEIGHT | BUILD | HAIR | EYES |
|---|---|---|---|---|
| | 180 | MEDIUM | BLACK | BROWN |

CAN SUSPECT VEHICLE BE DESCRIBED

| STATUS | REG STATE | REG. NO. | PLATE TYPE | YEAR(EXP) | MODEL | YES ☒ NO ☐ |
|---|---|---|---|---|---|---|
| TOWED SUSPECT VEHICLE | MA | W88GVD | PAN | 2005 | TAURUS | |

| VEHICLE MAKE YEAR | VEHICLE NO. | STYLE | COLOR(TOP-BOTTOM) |
|---|---|---|---|
| FORD - 2004 | 1FAFP55U14A171103 | SEDAN | TAN - TAN |

| OPERATOR'S NAME | LICENSE NO. | STATE | OPERATOR'S ADDRESS |
|---|---|---|---|
| RISE, REYLANDO | REVOKED | MA | 150 HARVARD ST, DORCHESTER, MA, 02124-0000 |

| OWNER'S NAME | OWNER'S ADDRESS |
|---|---|
| HERTZ | 1211 STATE RD 436, CASSELBERRY, FL, 32707-0000 |

CAN PROPERTY BE IDENTIFIED

| STATUS | TYPE OF PROPERTY | SERIAL OR IDENTI.GUARD NO. | BRAND NAME-DESCRIPTION | MODEL | VALUE | UCR | YES ☒ NO ☐ |
|---|---|---|---|---|---|---|---|
| SEIZED | DRUG / NARCOTICS | | - MARIJUANA 1 P/B | | | | |
| SEIZED | DRUG / NARCOTICS | | - CRACK COCAINE 2 P/B | | | | |
| SEIZED | MONEY | | - US CURRENCY | | 548.00 | | |
| SEIZED | DRUG / NARCOTICS EQUIPMENT | | - NOTEBOOK | | | | |
| SEIZED | CELLULAR PHONE | | MOTOROLA - BLACK | 1530 | | | |

IS THERE A SIGNIFICANT M.O.

| TYPE OF WEAPON-TOOL | NEIGHBORHOOD | TYPE OF BUILDING | PLACE OF ENTRY | YES ☐ NO ☒ |
|---|---|---|---|---|
| MOTOR VEHICLE | HIGHWAY/ROAD/ALLEY | N/A | N/A | |

| WEATHER | LIGHTING | TRANSPORTATION OF SUSPECT | VICTIM'S ACTIVITY |
|---|---|---|---|
| CLEAR | NATURAL | CAR | |

| UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATOR | RELATIONSHIP TO VICTIM |
|---|---|
| | N/A |

IS THERE ANY PHYSICAL EVIDENCE (DESCRIPTION AND DISPOSITION IN NARRATIVE)   YES ☒ NO ☐

IS THERE ANY OTHER REASON FOR INVESTIGATION (REASON BELOW)

**BLOCK NARRATIVE AND ADDITIONAL INFORMATION**   YES ☒ NO ☐

ABOUT 2:30 PM, SUNDAY, 2/27/05, OFFICERS LAHAM AND COGAVIN IN THE CK010 UNIT WHILE ON PATROL IN THE AREA OF HARVARD ST AND BERNARD ST DORCHESTER OBSERVED AN INDIVIDUAL THEY HAVE KNOWN FROM PRIOR INCIDENTS AND INFORMATION FROM FELLOW OFFICERS AS REYLANDO RISE SITTING INSIDE A TAN FORD TAURUS FL. REG. W88GVD. OFFICERS RAN A QUERY ON REYLANDO RISE FOR HIS LICENSE STATUS WHICH REVEALED THAT HIS LICENSE WAS REVOKED. MR. RISE STARTED THE MOTOR VEHICLE (FL. REG. W88GVD) AND OPERATED IT DOWN BERNARD TO TALBOT AV WHERE OFFICERS CONDUCTED A TRAFFIC STOP AT TALBOT AV AND COLONIAL AV. OFFICER COGAVIN ASKED THE OPERATOR FOR HIS LICENSE AND REGISTRATION WHERE HE RESPONDED, "I DO NOT HAVE A LICENSE." "IT IS SUSPENDED." OFFICER COGAVIN ASKED HIM IF HE HAD ANYTHING ON HIM AND HE TOLD OFFICER COGAVIN THAT HE HAD A "BAG OF WEED." OFFICER COGAVIN SEARCHED THE SUSPECT FINDING 1 9MM BULLET IN HIS FRONT LEFT POCKET OF HIS JEANS. THE SUSPECT WAS HANDCUFFED AND TAKEN INTO CUSTODY BY OFFICER COGAVIN A BAG OF GREEN LEAFY SUBSTANCE BELIEVED TO BE MARIJUANA AND 2 BAGS OF A YELLOW ROCK LIKE SUBSTANCE BELIEVED TO BE CRACK COCAINE WERE FOUND IN HIS LEFT FRONT POCKET OF HIS SWEATPANTS, WHICH WERE UNDER HIS JEANS. WHILE CHECKING FOR MORE CONTRABAND, OFFICER COGAVIN ALSO FOUND A SMALL BLACK AND WHITE COMPOSITION NOTEBOOK CONTAINING NAMES WITH DOLLAR AMOUNTS AND CELL PHONE NUMBERS IN A POCKET ON HIS LEFT ARM OF HIS JACKET. ALSO FOUND WAS A HANDCUFF KEY IN THE SUSPECTS WALLET. THE SUSPECT WAS TRANSPORTED TO D-3 FOR BOOKING BY THE CT55D (WILLIS). AT BOOKING THE SUSPECT HAD IN HIS POSSESSION $548 US CURRENCY AND A BLACK MOTOROLA CELL.

005

PHONE WHICH WERE SEIZED AS EVIDENCE ALONG WITH THE BLACK AND WHITE COMPOSITION NOTEBOOK. THE BLACK MOTOROLA CELL PHONE WAS SEIZED AFTER IT WAS LOGGED IN AS PRISONER PROPERTY SO THERE MAY BE A DISCREPANCY ON THE BOOKING INFORMATION. THE MARIJUANA AND CRACK COCAINE WERE LOGGED INTO THE DRUG BOOK #46 PAGE #813. THE 9MM BULLET WAS LOGGED IN AS BALLISTIC EVIDENCE. $548.00 US CURRENCY WERE SEIZED AND TURNED INTO THE HEADQUARTERS DRUG MONEY SAFE. FL. REG. W88GVD WAS TOWED BY AUTO SERVICE AND TIRE TICKET #0003. TOW LINE NOTIFIED, BELLEW. MOTOR VEHICLE INVENTORY FORM COMPLETED. SUSPECT ISSUED MA. UNIFORM CITATION #M0168092 FOR OP. M/V AFTER LICENSE REVOCATION, POSS. CL D AND POSS. CL B. WHILE AT THE D-3, TANYA GOSS, 12-03-73, ARRIVED AT B-3 AND SHOWED THE RENTAL AGREEMENT WITH HERTZ PROVING SHE WAS THE RENTER OF FL. REG. W88GVD AND THAT SHE DID NOT KNOW THAT THE SUSPECT TO THE M/V BECAUSE HE TOOK IT WHILE SHE WAS SLEEPING. THE TOW TICKET WAS RELEASED TO HER. THE SUSPECT WAS FURTHER CHARGED WITH USING W/O AUTHORITY (90-24) MA. UNIFORM CITATION #M0168093.

| UNIT ASSIGNED | TOUR OF DUTY | REPORTING OFFICER'S NAME | REPORTING OFFICER'S SIGNATURE | REPORTING OFFICER'S ID | PARTNER'S ID |
|---|---|---|---|---|---|
| CK01D | 2 | TIMOTHY G LAHAM | | 80406 | 86124 |

| DATE OF REPORT | SPECIAL UNITS NOTIFIED(REPORTING) | | | | TELETYPE NO. |
|---|---|---|---|---|---|
| 02/27/05 | BALLISTICS UNIT DRUG CONTROL UNIT TOW LOT | | | | |

| TIME COMPLETED | PATROL SUPERVISOR NAME | PAT. SUP. ID | DUTY SUP. NAME | DUTY SUP. SIGNATURE | DUTY SUP. ID |
|---|---|---|---|---|---|
| 04:37 PM | | | BRIAN E RILEY | | 8773 |

# EXHIBIT B



1 Schroeder Plaza, Boston, MA 02120-2014

Page   1 of 1
Date   3/14/05
CC     050102626

**DISTRICT/UNIT:**   <u>Area B-3/ CK01D</u>

**TO:**   Captain Timothy Murray, Commanding Officer Area B-3

**FROM:**   P.O. Dennis Cogavin, I.D. #86124

**SUBJECT:**   Reylando Rise arrest on February 27, 2005.

Sir:

    I respectfully submit this for your review. On February 27, 2005 I was assigned to the CK01D with Officer Timohy Laham. While in the area of Harvard St. and Bernard St. officers noticed a male known to them as Reylando Rise (D.O.B. 05/13/69). Mr. Rise was stopped for a revoked license on Talbot Ave. Upon asking Mr. Rise if he had anything on him he stated "some weed". Officer Cogavin checking for the marijuana discovered a bullet in his left front pant pocket. When he was informed he was being charged with possession of ammunition suspect stated to Officer Cogavin "I just found that in front of my house. I forgot about it."

                                        Respectfully submitted,

                                        P.O. Dennis Cogavin I.D. #86124

Mayor Thomas M. Menino • Commissioner Kathleen M. O'Toole

# EXHIBIT C

Case 1:05-cr-10113-DPW     Document 42-2     Filed 03/17/2006     Page 6 of 9

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 05-10113-DPW |
| ) | |
| REYLANDO REYES ) | |

AFFIDAVIT OF DEFENDANT IN
SUPPORT OF MOTION TO SUPPRESS

I, Reylando Rise, do hereby depose and say as follows:

1. I am the defendant in the above-referenced case. My true name is Reylando Rise.

2. On February 27, 2005, I was sitting in a car with the ignition off in the immediate vicinity of 150 Harvard Street, Dorchester, MA. The keys to the car were not in the ignition.

3. While I was sitting in the car, an unmarked police cruiser pulled behind my car and flashed its lights, which were clearly visible to me, instructing me to move the car. At the instruction and prompting of the police, I put the key in the ignition, started the motor vehicle, and began to drive. The police cruiser immediately followed me and shortly thereafter pulled me over.

4. A police officer approached the car and asked if I had a license and registration. I informed the officer that I did not have a license. At that point, the

officer ordered me out of the car and placed me in handcuffs.

5. While in handcuffs, the police began to ask me questions. The police had not yet read me my rights, and I had not signed a Miranda waiver.

6. On April 26, 2005, I had a court appearance at Dorchester District Court on state charges arising from the February 27, 2005 arrest.

7. I was arrested by several federal agents at the courthouse. They drove me to the federal courthouse.

8. While I was in the car, the female agent told me my arrest went smoother than anticipated. She had not yet read me my rights, and I had not signed a Miranda waiver.

9. I told her that she had numerous agents with her and that she had a good plan with regard to my arrest.

10. In addition, a male agent asked me why I was dressed in all black. He had not yet read me my rights, and I had not yet signed a Miranda waiver.

11. I told him that black helped me blend in.

The above is true to the best of my knowledge.

Signed under the penalties of perjury,

_____
Reylando Rise

3-6-06
Date