UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
            v.                  ) CRIMINAL NO.  05-10113-DPW
                                )
REYLANDO REYES,                 )
                                )
            Defendant.          )

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS FRUITS OF ILLEGAL STOP AND SEARCH AND STATEMENTS

The Unites States, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Antoinette E.M. Leoney, submits this memorandum of law in opposition to Defendant's Motion to Suppress Fruits of Illegal Stop and Search and Statements in the above-captioned matter.

Defendant Reylando Reyes ("Reyes") argues for the suppression of a single bullet and other items seized, as well as statements made in the course of an unlawful stop and search on February 27, 2005. *See* Def.'s Motion to Suppress at 1. As grounds for suppression, Reyes states that the evidence was obtained in violation of his rights under the Fourth and Fifth Amendments to the U.S. Constitution inasmuch as the police directed Reyes to start and drive a motor vehicle with the knowledge that his license had been revoked, thereby creating the crime which justified the subsequent stop and search. Id at 4. Accordingly, Reyes avers that the single bullet, other items seized and statements made to police officers were fruits of an illegal stop, search and seizure and must be suppressed. Id.

at 6.   Reyes states that he was not advised of his Miranda rights
as additional support for the suppression of statements made to
police officers at the time of the illegal stop, search and
seizure and as grounds for suppression of statements made to
agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives
("ATF") following arrest on a federal complaint.   <u>Id</u> at 7.

Reyes' arguments runs counter to both the facts and the
governing case law, as the stop of the vehicle Reyes was
operating was grounded firmly in the reasonable suspicion
necessary to make a traffic stop.   The subsequent search of his
person and seizure of a single bullet, one bag of marijuana and
two bags of crack were justified by Officer Cogavin's concern for
his own and Officer Laham's safety.

FACTUAL SUMMARY[1]

On the afternoon of February 27, 2005, Officer Timothy G.
Laham and Officer Dennis Cogavin of the Boston Police Department,
Area B-3, were driving north on Bernard Street during the course
of their patrol of Dorchester, Massachusetts.   *See* Affidavits of
Officer Dennis Cogavin and Officer Timothy G. Laham, attached
hereto as Exhibit A & B.   The two officers were dressed in plain
clothes and driving in an unmarked patrol car, as was typical of

---

[1]   The factual summary is based on the attached exhibits,
which are denoted here as Exhibits A through G.   The government
also anticipates that these facts will be elicited at any
suppression hearing, as well as, at trial.

their patrol. Id. Officer Cogavin was driving that day, and
Officer Laham was seated on the passenger side. *See* Exhibit A.
In the vicinity of the intersection of Bernard Street and Harvard
Street, Officer Cogavin slowed the car in anticipation of a stop
sign and intersection ahead. *See* Exhibits A and B. There,
Officer Laham observed the Reyes, sitting in the driver's seat of
a tan Ford Taurus with Florida license plate W88GVD facing south
on Bernard Street. Id. Reyes, was apparently known to both
officers as an "impact player" in the community, who had a
lengthy criminal record from prior incidents, as well as
information from fellow officers filed in Field
Interrogation/Observation/Frisk and/or Search reports ("FIOS
reports"). *See* Exhibits A, B, D and G. As a result, both
Officer Laham and Officer Cogavin were able to identify Reyes.
*See* Exhibits A and B. Upon seeing Reyes, Officer Laham recalled
that Reyes' driver's license had been revoked and said as much to
his partner, Officer Cogavin. Id. Officer Laham confirmed this
information by checking a three-ring binder they had in their
patrol car. The binder contained copies of various Boston Police
Department mugshot forms of known neighborhood impact players.
Id. Reyes' mugshot form was in the binder, and it showed that he
had previously been arrested for operating a vehicle after

revocation.[2]  *See* Exhibits A and B.  However, Officer Laham recognized from the date of the mugshot form that this information was not current.  <u>Id</u>.

Consequently, at approximately 2:28 p.m., Officer Laham began a query on the patrol car's mobile data computer terminal ("MDT") to determine the current status of Reyes' driver's license.  *See* Exhibits A, B and E.  The officers also ran an outstanding warrants check on Reyes at approximately the same time.  *See* Exhibit F.  Prior to Officer Laham finishing the MDT query, the two officers observed Reyes pull away from the curb and drive south on Bernard Street.  *See* Exhibits A and B. Needless to say, the officers are adamant that they <u>did</u> <u>not</u> pulled up behind Reyes while he sat in his vehicle with the motor shut off, and they <u>did</u> <u>not</u> instruct him to move or start and drive the vehicle.  <u>Id</u>.

Officer Cogavin stopped at a stop sign and then entered the intersection of Bernard Street and Harvard Street in order to make a U-turn.  <u>Id</u>.  Having turned around, Officer Cogavin was proceeding south on Bernard Street upon completion of the MDT query at approximately 2:30 p.m.  <u>Id</u>.  The MDT query confirmed that Reyes' driver's license had been revoked by the Massachusetts Registry of Motor Vehicles, and, as such, Reyes'

---

[2] The three-ring binder had been created by Officers Cogavin and Laham.  *See* Exhibit A.

was driving without a license.  *See* Exhibits A, B and the MDT Cad Sheet Log, attached hereto as Exhibit E.

Officer Cogavin turned on the lights and siren of the unmarked car and directed Reyes to pull over at the corner of Talbot Avenue and Colonial Avenue in order to conduct a traffic stop.  *See* Exhibits A and B.  Both officers exited the unmarked patrol car.  Id.  As Officer Laham covered the passenger's side of Reyes' car, Officer Cogavin approached the driver's side and asked Reyes for his license and registration.  *See* Exhibits A, B, and D.  Reyes replied that he did not have a license and that it was suspended.  Id.

For officers' safety, while Reyes was seated in his vehicle, Officer Cogavin asked Reyes if "he had anything on him," to which Reyes responded that he had "some weed".  Id.  Officer Cogavin then asked Reyes to exit his vehicle and step to the rear.  Id. In the process of patting down Reyes in search of the marijuana, Officer Cogavin discovered a nine millimeter bullet in the left front pocket of Reyes' jeans.  Id.  At that point, he handcuffed Reyes and took him into custody.  Id.  After removing the bullet from Reyes' pocket Officer Cogavin informed Reyes that he was being charged with possession of ammunition.  Id.  Reyes replied that he had just found the bullet in front of his house and forgot about it.  Id.

Officer Cogavin resumed his search of Reyes and found a bag

5

of marijuana and two bags of crack cocaine in the left front pocket of the sweat pants Reyes wore under his jeans.  *See* Exhibits A and B.  Officers Cogavin and Laham remained with Reyes as they waited for a police cruiser to transport Reyes to Area B-3.  Id.  The officers did not read Reyes his rights at the scene, and they are adamant that they did not interrogate Reyes following his arrest.  Id.

On April 25, 2005, ATF Special Agent Lisa A. Rudnicki obtained a federal criminal complaint and arrest warrant for Reyes, charging him with being a Felon in Possession of Ammunition, in violation of 18 U.S.C. §922(g)(1).  *See* Affidavit of Special Agent Lisa A. Rudnicki, attached hereto as Exhibit C.

On April 26, 2005, Special Agents Rudnicki, Philip Ball and John Paolillo, accompanied by several Boston Police Officers, approached Reyes inside the Dorchester District Courthouse where he was waiting for his state court case to be called.  Id.  SA Rudnicki approached Reyes, identified herself as an ATF agent and advised him of the federal arrest warrant.  Id.  SA Paolillo and SA Ball placed Reyes into handcuffs and led Reyes to an awaiting ATF vehicle.  Id.  An initial pat search of Reyes was performed, but it did not reveal any contraband on his person.  Id.

Once in the vehicle, SA Rudnicki advised Reyes of his *Miranda* rights in the presence of both SA Paolillo and SA Ball. Id.

During transport, despite having passed through the Dorchester District Court security checkpoint prior to arrest and despite the initial pat search after arrest, Reyes revealed that he had a knife concealed in the front of his pants and that it was causing him discomfort. *See* Exhibit C. SA Paolillo recovered a four inch double-edged plastic knife from inside the front of Reyes' pants. <u>Id</u>.

While in the vehicle, SA Rudnicki also informed Reyes of the federal charges pending against him. *See* Exhibits C and G. Reyes was not asked any questions relative to the pending federal charges, as he had already obtained legal counsel on the originating state charges. *See* Exhibit C. SA Rudnicki, however, did show Reyes a copy of his Massachusetts Board of Probation Criminal History spanning the past twenty years and containing numerous prior arrests and convictions which Reyes confirmed were accurately reflected on the record. *See* Exhibits C and G. SA Rudnicki also mentioned to Reyes that his arrest had gone more smoothly than she had anticipated. *See* Exhibit C. Reyes stated something to the effect that when he saw six guys approaching him, he presumed that they were police officers and knew enough not to resist. <u>Id</u>. SA Rudnicki responded by telling Reyes that she had sought additional support in anticipation of Reyes being non-compliant, to which Reyes responded, "You had a good plan." <u>Id</u>.

Reyes was taken to the ATF office for processing, and then transported to the U.S. Marshal Service to await his initial appearance in federal court.  <u>Id</u>.

SA Phillip Ball placed Reyes, who was dressed all in black, in the U.S. Marshal's cell block.  <u>Id</u>.  At that time, SA Ball asked Reyes what the reason was for his wearing all black.  <u>Id</u>. Reyes responded with something to the effect that, "I need to maintain my tactical advantage on the street ... black on black helps me blend in with the shadows."  <u>Id</u>.

<u>ARGUMENT</u>

One bullet, one bag of marijuana, and two bags of crack cocaine seized from the person of Reylando Reyes, a/k/a Ray Rise, following a routine traffic stop on February 25, 2005, should <u>not</u> be suppressed because they are the fruits of a legal search. First, Officers Laham and Cogavin affected a valid traffic stop when they observed Reyes operating a motor vehicle after his license had been revoked.  Second, Officer Cogavin's subsequent search of Reyes' person was justified as the momentary intrusion into Reyes' privacy paled in comparison to the safety risks perceived by the officers.  The seizure effectuated did not exceed the permissible scope of the <u>Terry</u> stop.

Further, there is simply no plausible factual or legal support for Reyes' claim that Officers Laham and Cogavin created a crime in order to justify the stop and search of his person.

8

One bullet, one bag of marijuana and two bags of crack cocaine obtained as a result of the lawful traffic stop and subsequent search and seizure are admissible and Reyes' motion to suppress should, therefore, be denied.

I.   AT THE TIME OF THE TRAFFIC STOP, OFFICERS LAHAM AND COGAVIN HAD SUFFICIENT PROBABLE CAUSE TO AFFECT AN ARREST.  THUS, SUBSEQUENT SEARCH AND SEIZURE OF REYES' PERSON WAS LEGAL AND EVIDENCE AND STATEMENTS OBTAINED THERE FROM ARE ADMISSIBLE.

In Terry v. Ohio, the Supreme Court determined that the Fourth Amendment regulates but does not prohibit temporary detentions that fall short of a full scale arrest.  See Terry, 392 U.S. 1, 88 (1968).  A traffic stop embodies such detention of the vehicle and its occupants.  See United States v. Chhien, 266 F.3d 1, 5 (1st Cir. 2001).

> "It therefore constitutes a seizure within the purview of the Fourth Amendment.  Delaware v. Prouse, 440 U.S. 648, 653 (1979).  This means, of course, that the stop must be supported by a reasonable and articulable suspicion of criminal activity, see Berkemer v. McCarty, 468 U.S. 420, 439 (1984), and that the detention must be reasonable under the circumstances, Whren v. U.S., 517 U.S. 806 (1996)."

Id.  To determine whether a stop is supported by the requisite reasonable suspicion in the context of a traffic stop, the court must first evaluate whether the officers' initial interference with the defendant was justified; second, the court must ask whether the ensuing search was "reasonably related in scope to the circumstances which justified the officers' initial interference."  United States v. Ivery, 427 F.3d 69, 72 (1st Cir.

9

2005); accord United States v. Nee, 261 F.3d 79, 83 (1st Cir.
2001)(citing Terry, 392 U.S. at 19-20).  Under the second part of
the test, a search is considered reasonable where a law
enforcement officer conducts a pat down to find weapons he
reasonably believes or suspects are then in the possession of the
person he has accosted." Ivery, 427 F.3d at 72 (quoting Ybarra
v. Illinois, 444 U.S. 85, 93 (1979)).  The First Circuit has held
that the second part of this two part test imposes a dual
requirement for a permissible warrantless search for weapons: (1)
the officers must have actually harbored a suspicion that the
suspect was armed; and (2) that suspicion must have been reliable
under the circumstances.  See Ivery, 427 F.3d at 72, (citing
United States v. Lott, 870 F.2d 778, 783-84 (1st Cir. 1989).

In the instant case, Officer Laham and Officer Cogavin had
more than the reasonable and articulable suspicion of criminal
activity required by the first part of the test to affect a
temporary detention of Reyes and the vehicle.  According to
Massachusetts state law,

> "No person shall operate on the ways of the
> commonwealth or elsewhere, if the registrar...[has]
> revoked any license to operate a motor vehicle issued
> to him under this chapter...and such license...has not
> been restored or a new license has not been issued to
> him."

Mass. Gen. Laws ch. 90, § 10 (2006).  Officer Laham took care to
first confirm his suspicion that Reyes' was operating a vehicle
despite the revocation of his license by checking his binder of

known neighborhood "impact players" and then affirming the result
by querying Reyes' current status on the patrol car's mobile data
computer terminal ("MDT").  Yet, before the query was completed,
Reyes pulled away from the curb and took off driving.  At no
time, while Reyes was parked at the curb, did the officers pull
up behind him and order him to move his vehicle.  It was only
after Reyes began to drive, and after the officers had confirmed
the status of his license, did the officers put their blue lights
and siren on and stop Reyes.  Therefore, at the time Officer
Laham and Officer Cogavin stopped Reyes, he was in actual
violation of state law and engaged in criminal activity.  The
officers' initial interference with Reyes was entirely justified,
as they had sufficient probable cause to affect an arrest.

     In satisfaction of the second part of the test the
government points to the law as stated above:  a search is
considered reasonable where a law enforcement officer conducts a
pat down to find weapons he reasonably believes or suspects are
then in the possession of the person he has accosted.  See Ivery,
427 F.3d at 72.  In posing the question, "Do you have anything on
you?" to Reyes, Officer Cogavin was concerned about safety for
himself and his partner.  Police policy - and common sense -
required that the officers ascertain whether or not Reyes was
armed.  Especially here.  Because, based on the officers' past
experience with the Reyes and information obtained from other

officers and FIOS reports, Officers Cogavin and Laham were keenly aware that Reyes had a lengthy criminal record, involving violent crimes and drug offenses.  In United States v. Gilliard, the First Circuit found that "firearms are 'tools of the trade[,]'" in reference to the sale of narcotics. See Gilliard, 847 F.2d 21, 25 (1st Cir. 1988)(quoting United States v. Oates, 560 F.2d 45, 62 (2nd Cir. 1977).  Given his concern for his own and his partner's safety, Officer Cogavin reasonably concluded that Reyes may have been armed.  See United States v. Stanley, 915 F.2d 54, 57 (1st Cir. 1990).  Thus, it was entirely reasonable for Officer Cogavin to suspect that Reyes was in possession of a weapon and would have been entirely reasonable to perform a pat down on that suspicion alone.  Here, however, Officer Cogavin asked Reyes if he had anything on him.  Reyes' admission that he was carrying contraband, marijuana, only strengthens Officer Cogavin's justification for conducting a pat down.  Upon Reyes' admission, in accordance with police policy, Officer Cogavin performed a pat down in search of the marijuana.  Touching what felt like a bullet in Reyes pocket prompted Officer Cogavin to handcuff Reyes immediately, again, acting out of concern for safety.

The Court must consider the circumstances and the progression of Officer Cogavin's interaction with Reyes as a whole.  See Stanley, 915 F.2d at 55 (citing United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987).  Applying this

12

standard of review, it is clear that the search of Reyes' person was reasonably related in scope to the circumstances which justified the officers' initial interference.

Having shown that the stop and search of Reyes did not violate the Fourth Amendment, the evidence seized from Reyes and the statements made to Officer Cogavin cannot be, and should not be, considered fruits of an illegal search. Because the traffic stop and subsequent search and seizure was lawful, Reyes has concocted a meritless claim that Officers Laham and Cogavin created the criminal conduct to legitimize their actions. In the face of Officer Laham's and Officer Cogavin's knowledge, experience and the detailed nature of their report and filings, Reyes' version of the traffic stop, search and seizure is simply implausible. Thus the bullet, one bag of marijuana, two bags of crack cocaine and any statements Reyes made to the officers on February 25, 2005 are admissible.

II.  WHERE REYES WAS ADVISED OF HIS MIRANDA RIGHTS UPON
     BEING TAKEN INTO FEDERAL CUSTODY, HIS STATEMENTS TO THE
     ATF AGENTS ARE ADMISSIBLE.

Reyes' argument that statements made following his arrest on a federal complaint must be suppressed because the questioning happened prior to the officers advising Reyes of his *Miranda* warnings is unavailing. Contrary to Reyes claim, none of the agents questioned or interrogated Reyes as to the circumstances of his arrest and the underlying charges. And, of course, the

13

single question SA Ball posed to Reyes, asking Reyes why he wore all black, does not relate to the federal charges pending against Reyes. Regardless of what was subsequently asked of him, immediately after exiting the Dorchester District Courthouse , Reyes was "informed of his right to remain silent, that anything he said could be used against him in a court of law, that he had the right to have a lawyer present during questioning, and that a lawyer would be provided for him if he could not afford a lawyer." *See* <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Accordingly, statements made by Reyes' are admissible and the government is entitled use such statements against him in court.

<u>CONCLUSION</u>

For the above stated reasons the government respectfully requests that this Court deny the Defendant's Motion to Suppress Fruits of Illegal Stop and Search and Statements.

```
                              MICHAEL J. SULLIVAN
                              United States Attorney
                    By:

                              /s/ Antoinette E.M. Leoney
                              ANTOINETTE E.M. LEONEY
                              Assistant U.S. Attorney
Dated: April 14, 2006         (617) 748-3103
```

<u>CERTIFICATE OF SERVICE</u>

Suffolk, ss.                  Boston, Massachusetts
                              April 14, 2005

I, Antoinette E.M. Leoney, Assistant U.S. Attorney, certify

14

that I caused a copy of the foregoing to be served by electronic
notice to Stylianus Sinnis, Esq., Federal Defender's Office, 408
Atlantic Avenue, 3rd Floor, Boston, MA 02210, the counsel of
record.

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY

# EXHIBIT  A

AFFIDAVIT

I, Dennis Cogavin, having been duly sworn, do hereby depose and state as follows:

1.  I am an police officer with the Boston Police Department, and have been so for approximately 4 years.  Prior to becoming a Boston Police Officer, I was a Dedham, MA, Police Officer for 6 years.  I am currently assigned to the Youth Violence Strike Force/Gang Unit, where my duties include proactive patrol of high crime areas or "hot spots," intelligence gathering and aiding the district station with any resources we can provide.  Since becoming a police officer I have also served in the Rapid Response Unit, the Neighborhood Service Unit, Patrol Wagon duties, and the Anti-Crime Unit.  In February of 2005, I was assigned to the Anti-Crime Unit at Area B-3 to patrol the area of Dorchester, Massachusetts.  My duties included, among other things, crime suppression, intelligence gathering, and plain clothes proactive policing.  At that time, my partner was Officer Timothy Laham.

2.  I submit this affidavit in support of the government's Memorandum of Law in Opposition to Defendant Reylando Reyes' Motion to Suppress Fruits of Illegal Stop and Search and Statements.  The facts herein as stated below are personally known to me as a result of my involvement in the arrest of

1

Reylando Reyes, a/k/a Ray Rise ("Reyes") incident to a traffic stop on the afternoon of February 27, 2005.

3.   On February 27, 2005, during the course of my patrolling duties, I observed a tan Ford Taurus with Florida license plate W88GVD facing south on Bernard Street in the vicinity of the intersection of Bernard Street and Harvard Street.  I was driving the unmarked patrol car that day and Officer Laham was seated in the front passenger seat, and we were dressed in plain clothes.

4.   As Reyes was known to me and to Officer Laham from prior incidents, as well as through information from fellow officers and Field Interrogation/Observation/Frisk and/or Search reports, we were able to identify that the individual sitting in the driver's seat was Reyes.

5.   Officer Laham stated that he believed that Reyes' driver's license had been suspended or revoked, and he confirmed this information by checking the 3-ring binder that we had in our patrol car.  This 3-ring binder contained copies of Boston Police Department mugshot forms of known neighborhood "impact players".  This binder was created by me and Officer Laham.  Reyes' mugshot form showed that he had been arrested for operating a vehicle after revocation.  That information, however, was not current as it had been reported on May 24, 2004.  Consequently, at 2:28 p.m., Officer Laham began a query on the patrol car's mobile data computer terminal ("MDT") to determine the current status of

2

Reyes' driver's license.

6.    I have read Reyes' sworn affidavit in support of his suppression motion.  And, contrary to Reyes' claim, I and Officer Laham did not pulled up behind Reyes while he sat in his vehicle with the motor shut off, and we did not instruct him to move or start and drive the vehicle.

7.    However, prior to Officer Laham finishing the MDT query, Reyes pulled away from the curb and drove south on Bernard Street.

8.    After Reyes pulled off, I stopped the patrol car at a stop sign and then entered the intersection of Bernard Street and Harvard Street.  I made a u-turn in order to turn the car around and we proceeded south on Bernard Street upon completion of the MDT query at 2:30 p.m.  The Registry of Motor Vehicles ("RMV") confirmed that Reyes' driver's license had been revoked and that Reyes was driving without a license.

9.    At that point, I turned on the lights and siren of our unmarked vehicle and directed Reyes to pull over his vehicle at the corner of Talbot Avenue and Colonial Avenue in order to conduct a traffic stop.  My partner and I exited the patrol car. Officer Laham covered the passenger's side of Reyes' car while I approached the driver's side and asked Reyes for his license and registration.  Reyes replied that he did not have a license and that it had been suspended.

10.   For officers' safety, while Reyes was seated in his vehicle, I asked Reyes if "he had anything on him," to which Reyes responded that he had "some weed".   I then requested that Reyes exit the car and step to the rear.   In the process of patting down Reyes in search of the marijuana, I discovered a nine millimeter bullet in the left front pocket of Reyes' jeans. At that point, I handcuffed Reyes and took him into custody. After removing the bullet from Reyes' pocket I informed Reyes that he was being charged with possession of ammunition.   Reyes replied that he had just found the bullet in front of his house and forgot about it.

11.   I resumed my search of Reyes and found a bag of marijuana and two bags of crack cocaine in the left front pocket of the sweat pants Reyes wore under his jeans.

12.   Officer Laham and I called for a police cruiser to transport Reyes to the station.   Neither of us read Reyes his rights at the scene, nor did we interrogate him following his arrest.

Signed under the pains and penalties of perjury, this *13* day of April, 2006.

Officer Dennis Cogavin
Boston Police Department
Boston, Massachusetts

4

# EXHIBIT  B

<u>AFFIDAVIT</u>

I, Timothy G. Laham, having been duly sworn, do hereby depose and state as follows:

1.  I am a police officer with the Boston Police Department, and have been so for approximately 5 years.  Since becoming a police officer I have served in the Rapid Response Unit, the Neighborhood Service Unit, Patrol Wagon duties, and the Anti-Crime Unit.  In February of 2005, I was assigned to the Anti-Crime Unit at Area B-3 to patrol the area of Dorchester, Massachusetts.  My duties included, among other things, crime suppression, intelligence gathering, and plain clothes proactive policing.  At that time, my partner was Officer Dennis Cogavin, who has since been transfer to the Youth Violence Strike Force/Gang Unit.

2.  I submit this affidavit in support of the government's Memorandum of Law in Opposition to Defendant Reylando Reyes' Motion to Suppress Fruits of Illegal Stop and Search and Statements.  The facts herein as stated below are personally known to me as a result of my involvement in the arrest of Reylando Reyes, a/k/a Ray Rise ("Reyes") incident to a traffic stop on the afternoon of February 27, 2005.

3.  During the course of my patrolling duties, I observed a tan Ford Taurus with Florida license plate W88GVD facing south on

1

Bernard Street in the vicinity of the intersection of Bernard Street and Harvard Street.

4. As Reyes was known to both me and Officer Dennis Cogavin from prior incidents, as well as through information from fellow officers and Field Interrogation/Observation/Frisk and/or Search reports, we were able to identify that the individual sitting in the driver's seat was Reyes.

5. I recalled that Reyes' driver's license had been revoked and confirmed this information in a three-ring binder we take on patrol containing copies of the Boston Police Department mugshot forms of known neighborhood "impact players". Reyes' mugshot form showed that he had been arrested for operating a vehicle after revocation. That information, however, was not current as it had been reported on May 24, 2004. Consequently, at 2:28 p.m., I began a query on the patrol car's mobile data computer terminal ("MDT") to determine the current status of Reyes' driver's license.

6. I have read Reyes' sworn affidavit in support of his suppression motion. And, contrary to Reyes' claim, Officer Cogavin and I did not pulled up behind Reyes while he sat in his vehicle with the motor shut off, and we did not instruct him to move or start and drive the vehicle.

7. However, prior to finishing my MDT query, Reyes pulled away from the curb and drove south on Bernard Street.

2

8.  After Reyes pulled off, Officer Cogavin stopped at a stop sign and then entered the intersection of Bernard Street and Harvard Street.  He made a u-turn in order to turn the car around and we proceeded south on Bernard Street upon completion of the query at 2:30 p.m.  The Registry of Motor Vehicles ("RMV") confirmed that Reyes' driver's license had been revoked and that Reyes was driving without at license.

9.  Officer Cogavin turned on the lights and siren of our unmarked vehicle and directed Reyes to pull over at the corner of Talbot Avenue and Colonial Avenue in order to conduct a traffic stop.  Officer Cogavin and I exited the unmarked patrol car.  I covered the passenger's side of the car while Officer Cogavin approached the driver's side and asked Reyes for his license and registration.  Reyes replied that he did not have a license and that it had been suspended.

10.  Officer Cogavin requested that Reyes exit the car and step to the rear.  Officer Cogavin asked Reyes if "he had anything on him", to which Reyes responded that he had "some weed".  In the process of patting down Reyes in search of the marijuana, Officer Cogavin discovered a nine millimeter bullet in the left front pocket of Reyes' jeans.  Officer Cogavin immediately handcuffed Reyes and took him into custody.  After removing the bullet from Reyes' pocket, Officer Cogavin informed Reyes that he was being charged with possession of ammunition.

3

Reyes replied that he had just found the bullet in his front yard and had forgotten about it.

11.   Officer Cogavin resumed his search of Reyes and found a bag of marijuana and two bags of crack cocaine in the left front pocket of the sweat pants Reyes wore under his jeans.

12.   Officer Cogavin and I called for a police cruiser to transport Reyes' to the station.  Neither of us read Reyes his rights at the scene, nor did we interrogate him following his arrest.

Signed under the pains and penalties of perjury, this 11th day of April, 2006.

Officer Timothy G. Laham
Boston Police Department
Boston, Massachusetts

4

# EXHIBIT  C

AFFIDAVIT

I, Lisa A. Rudnick, having been duly sworn, do hereby depose and state as follows:

1.  I am a Special Agent with the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed for over 10 years.  As a Special Agent, my duties include the investigation of various federal firearms violations, including illegal possession, sale and trafficking of firearms and/or ammunition.  I have been assigned to the Boston Field Division of ATF since September of 2002.

2.  I submit this affidavit in support of the government's Memorandum of Law in Opposition to Defendant Reylando Reyes' Motion to Suppress Fruits of Illegal Stop and Search and Statements.  The facts herein as stated below are personally known to me as a result of my involvement in the arrest of Reyes pursuant to a federal arrest warrant, obtained via criminal complaint for Reyes, charging him with being a Felon in Possession of Ammunition in violation of 18 U.S.C. 922(g)(1).

3.  On April 26, 2005, I approached Reyes inside the Dorchester District courthouse where he was waiting for his court case to be called, accompanied by ATF Special Agents Philip Ball and John Paolillo and Boston Police Officers Thomas Griffiths, John Puglia, Timothy Laham and Henriques.  I identified myself as an ATF agent and advised him of his federal arrest warrant.  SA

1

Paolillo and SA Ball placed Reyes into handcuffs and led him to the awaiting ATF vehicle.

4. Once outside, an initial pat search of Reyes was performed and did not reveal any contraband on his person.

5. Reyes was first transported to the ATF office to be processed. During transport, despite having passed through the Dorchester District Court security checkpoint prior to arrest and the initial pat search after arrest, Reyes revealed that he had a knife concealed in the front of his pants and that it was causing him discomfort. SA Paolillo recovered a four inch double-edged plastic knife from inside the front of Reyes' pants.

6. I advised Reyes of his Miranda rights in the presence of both SA Paolillo and SA Ball once we had reached the vehicle. During transport, I informed Reyes of the federal charges pending against him as an armed career criminal in felony possession of ammunition.

7. Reyes was not asked any questions relative to the pending federal charges as he had already obtained legal counsel on the originating state charges.

8. I did show Reyes a copy of his Massachusetts Board of Probation Criminal History spanning the past twenty years and containing numerous prior arrests and convictions which Reyes confirmed were accurately reflected on the record.

9. I also mentioned to Reyes that his arrest had gone more

2

smoothly than I had anticipated.  Reyes stated something to the

effect that when he saw six guys approaching him, he presumed

that they were police officers and knew enough not to resist.  I

advised Reyes that I had sought additional support in

anticipation of his non-compliance, to which Reyes responded,

"You had a good plan."

10.  Reyes was then transported to the U.S. Marshal Service

to await his Initial Appearance at the U.S. District Court.  SA

Ball placed Reyes, clothed in all black, in the U.S. Marshal's

cell block.  At that time, SA Ball asked Reyes what the reason

was for wearing black.  Reyes responded with something to the

effect that he needed to maintain his tactical advantage on the

street...black on black helped him blend in with the shadows.

Signed under the pains and penalties of perjury, this 10th

day of April, 2006.

Special Agent Lisa A. Rudnicki
Bureau of Alcohol, Firearms,
Tobacco and Explosives
Boston, Massachusetts

3

# EXHIBIT  F

Incident History for: #PD050102585

```
Entered       02/27/05  14:06:29  BY CK01D  86124
Dispatched    02/27/05  14:06:29  BY CK01D  86124
Enroute       02/27/05  14:06:29
Onscene       02/27/05  14:06:29
Closed        02/27/05  14:29:53
```

Initial Type: CD11      Final Type: CD11   (WARRANT SERVICE)
Initial Priority: 9      Final Priority: 9
Disposition: 8B     Source: R    Primary Unit: CK01D
Police BLK: 0341800  Fire BLK: 3495  EMS BLK: 1003202
Group: 03      Beat: 2     Map Page: 1111
Loc: 64 CAPEN ST ,DO btwn EVANS ST & MAXWELL ST (V)
Name:                    Addr:                      Phone:

```
/140629  (86124 ) $OUTSRV        ,NO MORE INFORMATION
/140629           *DISPOS  CK01D  #86124  COGAVIN, DENNIS C
                                  #80406  LAHAM, TIMOTHY G
                                  ,NO MORE INFORMATION
/140757           *QPERS   CK01D  T/CK01D
                                  ,NAME:JAMES,ADRIAN              DOB:051
                                  278   SEX:M   RAC:B   SOC:      OLN:
                                                  STATE:MA   REF#:
                                  NIC#:
/140819           *QVEH    CK01D  T/CK01D
                                  ,LIC:12XB60    VIN:                    STA
                                  TE:MA   LIY:05   LIT:PC   TAV:
/141355           *QVEH    CK01D  T/CK01D
                                  ,LIC:8155ZN    VIN:                    STA
                                  TE:MA   LIY:05   LIT:PC   TAV:
/141552           *QVEH    CK01D  T/CK01D
                                  ,LIC:7673TJ    VIN:                    STA
                                  TE:MA   LIY:05   LIT:PC   TAV:
/142453           *QVEH    CK01D  T/CK01D
                                  ,LIC:275NWR    VIN:                    STA
                                  TE:MA   LIY:05   LIT:PC   TAV:
/142517           *QVEH    CK01D  T/CK01D
                                  ,LIC:275NWH    VIN:                    STA
                                  TE:MA   LIY:05   LIT:PC   TAV:
/142721           *QVEH    CK01D  T/CK01D
```

```
LIC:W88GVD    VIN:                                STA
              TE:FL    LIY:05   LIT:PC   TAV:

/142810'          *QPERS   CK01D   T/CK01D
                                   ,NAME:RISE,REYLANDO              DOB:051
                                   369    SEX:M    RAC:B    SOC:        OLN:
                                                  STATE:MA    REF#:
                                   NIC#:
/142953  (11391 )  CLEAR   CK01D   DSP: 8B    - INVEST.PERS/NO PERSON FOUND
/142953            CLOSE   CK01D
```

014

Incident History for: #PD050102626

③

```
Entered      02/27/05  14:30:11  BY PDT03  11391
Dispatched   02/27/05  14:30:11  BY PDT03  11391
Enroute      02/27/05  14:30:11
Onscene      02/27/05  14:30:11
Closed       02/27/05  18:49:38
```

Initial Type: TSTOP       Final Type: ARREST (ARREST O/S NO ASSISTANCE)
Initial Priority: 9       Final Priority: 7
Disposition: RPT    Source: R    Primary Unit: C411D
Police BLK: 0343801  Fire BLK: 3421  EMS BLK: 1005501
Group: 03      Beat: 1    Map Page: 1113
Loc: COLONIAL AV/TALBOT AV ,DO   <000,200>   (V)
Name:                    Addr:                    Phone:

```
/143011  (11391 )  $OUTSRV         ,NO MORE INFORMATION
/143011            OUTONS  CK01D   @FLW88GVD
                                   #86124  COGAVIN, DENNIS C
                                   #80406  LAHAM,TIMOTHY G
                                   ,NO MORE INFORMATION
/143011            QVEH    CK01D   @FLW88GVD
                                   #86124  COGAVIN, DENNIS C
                                   #80406  LAHAM,TIMOTHY G
                                   ,Vehicle Query


/143214            ASSTER  CT55D   [TALBOT/COLONIAL]
                                   #10176  WILLIS JR, ANTHONY
/143222  (11480 )  ASSTER  C906    [TALBOT/COLONIAL]
                                   #11756  FORD, JOHN J
/143907  (86124 )  *QVEH   CK01D   T/CK01D
                                   ,LIC:W88GVD      VIN:                 STA
                                   TE:FL   LIY:05   LIT:PC   TAV:
/143011
/143011
/143957  (11391 )  ONSCNE  C906
/145732            CHANGE          LOC: TALBOT/COLONIAL -->  COLONIAL AV/TALBOT A
                                   V ,DO,
                                   TYP: TSTOP -->  ARREST,
                                   RSP: P -->  PW,
                                   PRI: 9 -->  7,
                                   BLK:  -->  0343801
/145739            CLEAR   C906
/150834            ASSTOS  C411D   [COLONIAL AV/TALBOT AV ,DO]
                                   #11743  TAXTER, LUCAS E
/152949            CLEAR   CT55D
/171310  (90272 )  CLEAR   CK01D   DSP: RPT    - REPORT
/184938            CLEAR   C411D
```

**015**

# EXHIBIT  G

```
*************************************************************************
                                                                        *
       ******* WARNING ******** WARNING ********                        *
                                                                        *
     THIS INFORMATION IS CORI.  IT IS NOT SUPPORTED BY FINGERPRINTS.    *
PLEASE CHECK THAT THE NAME REFERENCED BELOW MATCHES THE NAME AND DATE OF BIRTH*
OF THE PERSON REQUESTED.                                                *
                                                                        *
*************************************************************************
```

```
          **********      COMMONWEALTH OF MASSACHUSETTS      **********
                          CRIMINAL HISTORY SYSTEMS BOARD

                          *** PERSONS COURT SUMMARY ***
```

AM: REYES, REYLANDO            FORMAL-NAM: ROLAND           PCF: 00000712898
OB: 05/13/69   SEX: M  RAC: B      POB: BOSTON              SSN: 012467773
OM:SHIRLEY RISE        POP:DANIEL ROSS    HGT: 600 WGT: 180 HAI: BLK EYE: BRO
DDRESS: 76 GREENWOOD ST #1 DORCHESTER MA


LIAS:
    NAM: RISE, REYLANDO
    FORMAL-NAM: ROLAND
    DOB: 05/13/66   SEX: M   RAC:

LIAS:
    NAM: RISE, RAYNALDO
    FORMAL-NAM: REYNOLD
    DOB: 05/13/69   SEX: M   RAC:

LIAS:
    NAM: RISE, RAYLANDO
    FORMAL-NAM: RAYLANDO
    DOB: 05/13/69   SEX: M   RAC:
    POB: BOSTON                SSN: 000000000
    MOM: SHIRLEY
    POP: DANIEL
    ADDRESS: 76 GREENWOOD STREET DORCHESTER MA

LIAS:
    NAM: RISE, RAY
    FORMAL-NAM: RAYMOND
    DOB: 05/13/69   SEX: M   RAC:
    ADDRESS: 76 GREENWOOD ST DORCHESTER



***** ***** ***** ***** ADULT APPEARANCES ***** ***** ***** ***** *****

RRAIGNMENT: (001)                                          **085**
ARG-DATE: 02/28/05 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:   0507CR1252A
OFF:  OPERATING AFTER SUSPEND LIC                        114B-SUS
DISP: C 4/26/05                                          STATUS: O  WPD:

RRAIGNMENT: (002)
ARG-DATE: 02/28/05 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0507CR1252B
OFF:  POSS FIREARM W/O PERMIT                                 FIR POSS WO PERM
DISP: C 4/26/05                                               STATUS: O    WPD:


RRAIGNMENT: (003)
ARG-DATE: 02/28/05 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0507CR1252C
OFF:  POSS CLASS D CONT SUB                                   CSA POSS D
DISP: C 4/26/05                                               STATUS: O    WPD:


RRAIGNMENT: (004)
ARG-DATE: 02/28/05 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0507CR1252D
OFF:  POSS TO DISTRIBUTE CLASS B                              CSA POSS DIST B
DISP: C 4/26/05                                               STATUS: O    WPD:


RRAIGNMENT: (005)
ARG-DATE: 02/28/05 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0507CR1252E
OFF:  USE WITHOUT AUTHORITY                                   114A
DISP: C 4/26/05                                               STATUS: O    WPD:


RRAIGNMENT: (006)
ARG-DATE: 03/25/02 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0207CR1890A
OFF:  RESISTING ARREST                                        RESIST ARST
DISP: C 5/15/02 DISM                                          STATUS: C    WPD:


RRAIGNMENT: (007)
ARG-DATE: 03/25/02 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    0207CR1890B
OFF:  OPERATING AFTER SUSPEND LIC                             114B-SUS
DISP: C 5/15/02 G 60DA SS 5/15/03 VWF VN 5/28/03 DF 10/6 STATUS: C    WPD:
      03 D/R TERM & DISCH


RRAIGNMENT: (008)
ARG-DATE: 02/23/01 PD: BOS COURT: WEST ROXBURY DISTRICT        DKT#:    0106CR0539A
OFF:  OPERATING AFTER SUSPEND LIC                             114B-SUS
DISP: C 3/16/01 G 10DA CMTD                                   STATUS: C    WPD:


RRAIGNMENT: (009)
ARG-DATE: 03/02/98 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    9807CR1624A
OFF:  POSS CLASS D CONT SUB                                   CSA POSS D
DISP: C JT 6/16/98 DISM                                       STATUS: C    WPD:


086

RRAIGNMENT: (010)
ARG-DATE: 03/02/98 PD: BOS COURT: DORCHESTER DISTRICT          DKT#:    9807CR1624B

RRAIGNMENT: (011)
 ARG-DATE: 09/13/96 PD: BOS COURT: SUFFOLK SUPERIOR       DKT#:      9610152
 OFF:  POSS CLASS D CONT SUB          W/I               CSA POSS D
 DISP: 2YR-1DA MCICJ CONC                               STATUS: C   WPD:


RRAIGNMENT: (012)
 ARG-DATE: 12/22/95 PD: BOS COURT: SUFFOLK SUPERIOR       DKT#:      9511673001
 OFF:  DISTRIBUTE/DISPENSE CLASS B    UNL SCHOOL ZONE (i) CSA DIST B
 DISP: C 9/16/96 2YR-1DA MCICJ F&A VWF DAF              STATUS: C   WPD:


RRAIGNMENT: (013)
 ARG-DATE: 12/22/95 PD: BOS COURT: SUFFOLK SUPERIOR       DKT#:      9511673002
 OFF:  DISTRIBUTE/DISPENSE CLASS B    UNL 2ND OFFENSE    CSA DIST B
 DISP: C 9/16/96 1DA HC CMTD                            STATUS: C   WPD:


RRAIGNMENT: (014)
 ARG-DATE: 10/11/95 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:      9507CR7353A
 OFF:  DISTRIBUTING CONT SUB         DRUGS SCHOOL ZONE   CSA DIST
 DISP: C 11/16/95 (JT@6) DISM INDICT                    STATUS: C   WPD:


RRAIGNMENT: (015)
 ARG-DATE: 10/11/95 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:      9507CR7353B
 OFF:  DISTRIBUTE/DISPENSE CLASS B                       CSA DIST B
 DISP: C 11/16/95 (JT@6) DISM INDICT                    STATUS: C   WPD:


RRAIGNMENT: (016)
 ARG-DATE: 10/11/95 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:      9507CR7353C
 OFF:  DISTRIBUTE/DISPENSE CLASS B    SUBSQ OFFENSE      CSA DIST B
 DISP: C 11/16/95 (JT@6) DISM INDICT                    STATUS: C   WPD:


RRAIGNMENT: (017)
 ARG-DATE: 08/31/95 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:      9507CR5916A
 OFF:  POSS CONTROLLED SUBS W/I DIST  W/I SCHOOL         CSA POSS DIST
 DISP: C 2/8/96 (JT@6) DISM INDICT                      STATUS: C   WPD:


RRAIGNMENT: (018)
 ARG-DATE: 08/31/95 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:      9507CR5916B
 OFF:  POSS TO DISTRIBUTE CLASS D                        CSA POSS DIST D
 DISP: C 2/8/96 (JT@6) DISM INDICT            **087**    STATUS: C   WPD:

RRAIGNMENT: (019)
 ARG-DATE: 08/31/95 PD: BOS COURT: DORCHESTER DISTRICT       DKT#:    9507CR5916C
 OFF:   POSS CLASS D CONT SUB                                CSA POSS D
 DISP: C 2/8/96 (JT@6) DISM INDICT                           STATUS: C   WPD:


RRAIGNMENT: (020)
 ARG-DATE: 07/27/95 PD: BOS COURT: DORCHESTER DISTRICT       DKT#:    9507CR5467A
 OFF:   MFG CLASS B CONT SUB                                 CSA MFG B
 DISP: C 2/8/96 (JT@6) DISM INDICT                           STATUS: C   WPD:


RRAIGNMENT: (021)
 ARG-DATE: 07/27/95 PD: BOS COURT: DORCHESTER DISTRICT       DKT#:    9507CR5467B
 OFF:   POSS CLASS D CONT SUB            W/INT               CSA POSS D
 DISP: C 2/8/96 (JT@6) DISM INDICT                           STATUS: C   WPD:


RRAIGNMENT: (022)
 ARG-DATE: 05/24/95 PD: SPH COURT: BOSTON DISTRICT           DKT#:    9501CR3897A
 OFF:   OPERATING AFTER SUSPEND LIC                          114B-SUS
 DISP: C 8/2/95 7DA CMTD                                     STATUS: C   WPD:


RRAIGNMENT: (023)
 ARG-DATE: 05/24/95 PD: SPH COURT: BOSTON DISTRICT           DKT#:    9501CR3897C
 OFF:   KNOWINGLY REC STOLEN PROP        CRDT CARD           RSG
 DISP: C 8/2/95 DISM                                         STATUS: C   WPD:


RRAIGNMENT: (024)
 ARG-DATE: 05/24/95 PD: SPH COURT: BOSTON DISTRICT           DKT#:    9501CR3897D
 OFF:   CREDIT CARD MISUSE             OBT GDS FLS CC MORE CRDT CARD
 DISP: C 8/2/95 DISM                                         STATUS: C   WPD:


RRAIGNMENT: (025)
 ARG-DATE: 07/11/94 PD: BOS COURT: SUFFOLK SUPERIOR          DKT#:    9411020001
 OFF:   ASSAULT TO KILL                   ARM                ASLT KILL
 DISP: C 8/5/94 12/19/94 DISM                                STATUS: C   WPD:


RRAIGNMENT: (026)
 ARG-DATE: 07/11/94 PD: BOS COURT: SUFFOLK SUPERIOR          DKT#:    9411020002
 OFF:   A&B DANGEROUS WEAPON                                 A&B DW
 DISP: C 8/5/94 12/19/94 DISM                                STATUS: C   WPD:

**088**

RRAIGNMENT: (027)

Case 1:05-cv-11103-DPW   Document 3-4/A   Filed 04/2006   Page 40 of 22

ARG-DATE: 07/11/94 PD: BOS COURT: SUFFOLK SUPERIOR        DKT#:      9411020003
OFF:   POSS OF AMMUNITION                                 POSS AMMO
DISP: C 8/5/94 12/19/94 DISM                              STATUS: C   WPD:


RRAIGNMENT: (028)
 ARG-DATE: 07/11/94 PD: BOS COURT: SUFFOLK SUPERIOR        DKT#:      9411020004
 OFF:   POSS OF FIREARM                   NOT HME/WRK NO LIC FIR POSS
 DISP: C 8/5/94 12/19/94 DISM                              STATUS: C   WPD:


RRAIGNMENT: (029)
 ARG-DATE: 06/20/94 PD: BOS COURT: DORCHESTER DISTRICT     DKT#:      9407CR3626A
 OFF:   A&B DANGEROUS WEAPON                               A&B DW
 DISP: WAR 6/27/94 W/WD C 7/8/94 DISM INDICT               STATUS: C   WPD:


RRAIGNMENT: (030)
 ARG-DATE: 06/20/94 PD: BOS COURT: DORCHESTER DISTRICT     DKT#:      9407CR3626B
 OFF:   ASSAULT TO KILL                                    ASLT KILL
 DISP: WAR 6/27/94 W/WD C 7/8/94 DISM INDICT               STATUS: C   WPD:


RRAIGNMENT: (031)
 ARG-DATE: 11/22/93 PD: BOS COURT: BOSTON MUNICIPAL JURY OFDKT#:         932165A
 OFF:   OPERATING AFTER REVOKE LICENSE                     114B-REV
 DISP: C 12/17/93 FINE $500/CMNTY SRV 6/15/94 (@8 1501A)6 STATUS: C   WPD:
      15/94 DF 11/22/94 DR 3/3/95 DF 10/11/95 DR DISM


RRAIGNMENT: (032)
 ARG-DATE: 11/22/93 PD:       COURT: BOSTON MUNICIPAL JURY OFDKT#:        932165B
 OFF:   TRUE NAME VIOLATION                                TRUE NM LAW
 DISP: C 12/17/93 FILE (@8 1501B)                          STATUS: C   WPD:


RRAIGNMENT: (033)
 ARG-DATE: 07/19/93 PD:       COURT: BRIGHTON DISTRICT      DKT#:      9308CR1501A
 OFF:   OPERATING AFTER REVOKE LICENSE                     114B-REV
 DISP: C 8/20/93 9/22/93 10/21/93 11/26/93 FJ 11/2/94 W/R STATUS: C   WPD:
      10/11/95 DISM


RRAIGNMENT: (034)
 ARG-DATE: 07/19/93 PD:       COURT: BRIGHTON DISTRICT      DKT#:      9308CR1501B
 OFF:   TRUE NAME VIOLATION                                TRUE NM LAW
 DISP: C 8/20/93 9/22/93 10/21/93 11/26/93 FJ 11/2/94 W/R STATUS: C   WPD:
      10/11/95 DISM


RRAIGNMENT: (035)                                    **089**
 ARG-DATE: 02/03/92 PD:       COURT: DORCHESTER DISTRICT    DKT#:      9207CR0931A
 OFF:   ASSAULT TO KILL                                    ASLT KILL
 DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                 STATUS: C   WPD:

RRAIGNMENT: (036)
ARG-DATE: 02/03/92 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9207CR0931B
OFF:  A&B DANGEROUS WEAPON                 HAND GUN             A&B DW
DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                       STATUS: C    WPD:


RRAIGNMENT: (037)
ARG-DATE: 02/03/92 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9207CR0931C
OFF:  POSS OF FIREARM                      NOT HOME WORK LIC    FIR POSS
DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                       STATUS: C    WPD:


RRAIGNMENT: (038)
ARG-DATE: 02/03/92 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9207CR0931D
OFF:  DISCHARGING A FIREARM               500'OF BUILDING       FIR DISCH
DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                       STATUS: C    WPD:


RRAIGNMENT: (039)
ARG-DATE: 02/03/92 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9207CR0931E
OFF:  ASSAULT DANGEROUS WEAPON            HAND GUN              ASLT DW
DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                       STATUS: C    WPD:


RRAIGNMENT: (040)
ARG-DATE: 02/03/92 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9207CR0931F
OFF:  THREATENING                                              THREAT
DISP: WAR 12/16/92 WAR/WD C 12/24/92 DISM                       STATUS: C    WPD:


RRAIGNMENT: (041)
ARG-DATE: 12/31/91 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9107CR9797A
OFF:  USE WITHOUT AUTHORITY                                    114A
DISP: C 3/10/92 G 6MO CMTD                                      STATUS: C    WPD:


RRAIGNMENT: (042)
ARG-DATE: 12/31/91 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9107CR9797B
OFF:  OPERATING AFTER SUSPEND LIC                              114B-SUS
DISP: C 3/10/92 G FILE                                          STATUS: C    WPD:


RRAIGNMENT: (043)
ARG-DATE: 12/31/91 PD:        COURT: DORCHESTER DISTRICT        DKT#:      9107CR9797D
OFF:  OPER TO END (LIVES&SAFTEY)                               112A
DISP: C 3/10/92 G FILE                                          STATUS: C  ·  WPD:

**090**

RRAIGNMENT: (044)
ARG-DATE: 12/19/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR9512A
OFF:  POSS CLASS B CONT SUB                                  CSA POSS B
DISP: C 3/10/92 G FILE                                       STATUS: C    WPD:


RRAIGNMENT: (045)
ARG-DATE: 12/19/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR9512B
OFF:  CONTRIBUTING TO DELIQUENCY      CHILD                  CONTR DEL
DISP: C 3/10/92 DISM                                         STATUS: C    WPD:


RRAIGNMENT: (046)
ARG-DATE: 12/19/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR9512C
OFF:  OPERATING AFTER SUSPEND LIC                            114B-SUS
DISP: C 3/10/92 G FILE                                       STATUS: C    WPD:


RRAIGNMENT: (047)
ARG-DATE: 10/16/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR7593A
OFF:  DISTRIBUTE/DISPENSE CLASS B    SCHOOL ZONE             CSA DIST B
DISP: C 12/11/91 DISM                                        STATUS: C    WPD:


RRAIGNMENT: (048)
ARG-DATE: 10/16/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR7593B
OFF:  DISTRIBUTE/DISPENSE CLASS B    SCHOOL ZONE             CSA DIST B
DISP: C 3/10/92 DISM                                         STATUS: C    WPD:


RRAIGNMENT: (049)
ARG-DATE: 10/16/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR7593C
OFF:  MFG CLASS B CONT SUB                                   CSA MFG B
DISP: C 12/11/91 DISM                                        STATUS: C    WPD:


RRAIGNMENT: (050)
ARG-DATE: 10/16/91 PD:       COURT: DORCHESTER DISTRICT      DKT#:    9107CR7593D
OFF:  MFG CLASS D CONT SUB                                   CSA MFG D
DISP: C 12/11/91 G 2YR SS 12/11/94 VWF 1/28/92 R/R 2YR       STATUS: C    WPD:
      CMTD


RRAIGNMENT: (051)
ARG-DATE: 01/10/91 PD:       COURT: SUFFOLK SUPERIOR         DKT#:        093080
OFF:  POSS OF FIREARM                WO ID (PISTOL)          FIR POSS
DISP: 2/13/91 SPS (1YR) 4/1/92 SURR CMTD                     STATUS: C    WPD:


**091**


RRAIGNMENT: (052)
ARG-DATE: 01/10/91 PD:       COURT: SUFFOLK SUPERIOR         DKT#:        093081
OFF:  POSS OF AMMUNITION             WO ID                   POSS AMMO

RRAIGNMENT: (053)
ARG-DATE: 01/10/91 PD:      COURT: SUFFOLK SUPERIOR       DKT#:        093082
OFF:  POSS ALTERED FIREARM            DEFACED           FIR POSS ALT
DISP: 2/13/91 SPS (1YR) 4/1/92 SURR CMTD                STATUS: C    WPD:


RRAIGNMENT: (054)
ARG-DATE: 09/18/90 PD:      COURT: SUFFOLK SUPERIOR       DKT#:        090649
OFF:  A&B DANGEROUS WEAPON                              A&B DW
DISP: C 2/13/91 SPS (1YR) 2/12/93 $50.00 VWF            STATUS: C    WPD:
      4/1/92 CMTD


RRAIGNMENT: (055)
ARG-DATE: 09/18/90 PD:      COURT: SUFFOLK SUPERIOR       DKT#:        090650
OFF:  CARRYING DANGEROUS WEAPON                         DWC
DISP: C 2/13/91 SPS (1YR) 2/12/93                       STATUS: C    WPD:
      4/1/92 CMTD


RRAIGNMENT: (056)
ARG-DATE: 09/10/90 PD:      COURT: DORCHESTER DISTRICT     DKT#:   9007CR7345A
OFF:  POSS FIREARM W/O PERMIT                           FIR POSS WO PERM
DISP: C 10/30/90 DISM INDICT                            STATUS: C    WPD:


RRAIGNMENT: (057)
ARG-DATE: 09/10/90 PD:      COURT: DORCHESTER DISTRICT     DKT#:   9007CR7345B
OFF:  POSS ALTERED FIREARM                              FIR POSS ALT
DISP: C 10/30/90 DISM INDICT                            STATUS: C    WPD:


RRAIGNMENT: (058)
ARG-DATE: 09/10/90 PD:      COURT: DORCHESTER DISTRICT     DKT#:   9007CR7345C
OFF:  POSS OF AMMUNITION                                POSS AMMO
DISP: C 10/30/90 C 12/4/90 DISM INDICT                  STATUS: C    WPD:


RRAIGNMENT: (059)
ARG-DATE: 08/22/90 PD:      COURT: DORCHESTER DISTRICT     DKT#:   9007CR6865A
OFF:  A&B DANGEROUS WEAPON                              A&B DW
DISP: WAR 9/10/90 WAR/WD C 10/10/90 DISM & IND          STATUS: C    WPD:


RRAIGNMENT: (060)
ARG-DATE: 08/22/90 PD:      COURT: DORCHESTER DISTRICT     DKT#:   9007CR6865B
OFF:  ASSAULT TO KILL                                   ASLT KILL
DISP: WAR 9/10/90 WAR/WD C 10/10/90 DISM & IND    **092**   STATUS: C    WPD:

RRAIGNMENT: (061)
 ARG-DATE: 05/29/90 PD:      COURT: ROXBURY DISTRICT      DKT#:    9002CR4335A
 OFF:  ASSAULT DANGEROUS WEAPON      GUN          ASLT DW
 DISP: C 11/26/90 DF WAR 9/25/91 D/R C 11/12/91   STATUS: C   WPD:
       DISM


RRAIGNMENT: (062)
 ARG-DATE: 03/08/90 PD:      COURT: BOSTON MUNICIPAL JURY OFDKT#:       901342
 OFF:  A&B DANGEROUS WEAPON                      A&B DW
 DISP: DF D/R DF D/R C 5/31/91 2MO CMTD (@7 00064A)   STATUS: C   WPD:


RRAIGNMENT: (063)
 ARG-DATE: 03/08/90 PD:      COURT: BOSTON MUNICIPAL JURY OFDKT#:       901343
 OFF:  A&B ON POLICE OFFICER                     A&B PO
 DISP: DF D/R DF D/R C 5/31/91 2MO CMTD (@7 00064B)   STATUS: C   WPD:


RRAIGNMENT: (064)
 ARG-DATE: 03/08/90 PD:      COURT: BOSTON MUNICIPAL JURY OFDKT#:       901344
 OFF:  A&B ON POLICE OFFICER                     A&B PO
 DISP: DF D/R DF D/R C 5/31/91 2MO CMTD VWF (@7 00064C)   STATUS: C   WPD:


RRAIGNMENT: (065)
 ARG-DATE: 03/08/90 PD:      COURT: BOSTON MUNICIPAL JURY OFDKT#:       901345
 OFF:  DISORDERLY PERSON                         DIS PERS
 DISP: WAR WAR/WD WAR WAR/WD C 5/31/91 2MO CMTD   (@7 0006 STATUS: C   WPD:
       4D)


RRAIGNMENT: (066)
 ARG-DATE: 01/03/90 PD:      COURT: DORCHESTER DISTRICT      DKT#:   9007CR00064A
 OFF:  A&B DANGEROUS WEAPON                      A&B DW
 DISP: C 2/16/90 FJ                              STATUS: C   WPD:


RRAIGNMENT: (067)
 ARG-DATE: 01/03/90 PD:      COURT: DORCHESTER DISTRICT      DKT#:   9007CR00064B
 OFF:  A&B ON POLICE OFFICER                     A&B PO
 DISP: C 2/16/90 FJ                              STATUS: C   WPD:


RRAIGNMENT: (068)
 ARG-DATE: 01/03/90 PD:      COURT: DORCHESTER DISTRICT      DKT#:   9007CR00064C
 OFF:  A&B ON POLICE OFFICER                     A&B PO
 DISP: C 2/16/90 FJ                              STATUS: C   WPD:

**093**

RRAIGNMENT: (069)
 ARG-DATE: 01/03/90 PD:      COURT: DORCHESTER DISTRICT      DKT#:   9007CR00064D

RRAIGNMENT: (070)
 ARG-DATE: 12/19/88 PD:        COURT: BOSTON MUNICIPAL JURY OFDKT#:        876255
 OFF:  KNOWINGLY REC STOLEN PROP      MV        RSG
 DISP: C 12/19/88 2YR SS 1YR CMTD 12/18/91   (@7 7770)    STATUS: C   WPD:
       TERM

RRAIGNMENT: (071)
 ARG-DATE: 12/19/88 PD:        COURT: BOSTON MUNICIPAL JURY OFDKT#:        887960
 OFF:  ASSAULT DANGEROUS WEAPON            ASLT DW
 DISP: C 9/7/88 FILE  (@7 9243A)           STATUS: C   WPD:

RRAIGNMENT: (072)
 ARG-DATE: 12/19/88 PD:        COURT: BOSTON MUNICIPAL JURY OFDKT#:        887961
 OFF:  POSS CLASS D CONT SUB             CSA POSS D
 DISP: C 12/7/88 FILE   (@7 9243B)         STATUS: C   WPD:

RRAIGNMENT: (073)
 ARG-DATE: 12/16/88 PD: BOS COURT: WEST ROXBURY DISTRICT    DKT#:    8806CR6935A
 OFF:  LARCENY LESS              PROP       LAR LESS
 DISP: DF 2/23/01 D/R C 3/16/01 DISM       STATUS: C   WPD:

RRAIGNMENT: (074)
 ARG-DATE: 11/25/88 PD:        COURT: DORCHESTER DISTRICT    DKT#:    8807CR10720A
 OFF:  DISORDERLY PERSON             DIS PERS
 DISP: C 3/7/89 DISM             STATUS: C   WPD:

RRAIGNMENT: (075)
 ARG-DATE: 11/25/88 PD:        COURT: DORCHESTER DISTRICT    DKT#:    8807CR10720B
 OFF:  THREATENING              THREAT
 DISP: C 3/7/89 DISM             STATUS: C   WPD:

RRAIGNMENT: (076)
 ARG-DATE: 11/01/88 PD:        COURT: DORCHESTER DISTRICT    DKT#:    8807CR9898A
 OFF:  DISORDERLY PERSON             DIS PERS
 DISP: C 12/8/88 CC PAID & DISM          STATUS: C   WPD:

RRAIGNMENT: (077)
 ARG-DATE: 10/13/88 PD:        COURT: DORCHESTER DISTRICT    DKT#:    8807CR9243A
 OFF:  ASSAULT DANGEROUS WEAPON          ASLT DW
 DISP: C 12/8/88 FJ                  **094**    STATUS: C   WPD:

RRAIGNMENT: (078)
 ARG-DATE: 10/13/88 PD:    COURT: DORCHESTER DISTRICT    DKT#:    8807CR9243B
 OFF:  POSS CLASS D CONT SUB                            CSA POSS D
 DISP: C 12/8/88 FJ                                     STATUS: C   WPD:


RRAIGNMENT: (079)
 ARG-DATE: 09/20/88 PD:    COURT: BOSTON MUNICIPAL JURY OFDKT#:       885934
 OFF:  POSS TO DISTRIBUTE CLASS D                       CSA POSS DIST D
 DISP: C 12/19/88 2YR CMTD (7 4834A)                    STATUS: C   WPD:


RRAIGNMENT: (080)
 ARG-DATE: 09/20/88 PD:    COURT: BOSTON MUNICIPAL JURY OFDKT#:       886021
 OFF:  POSS OF AMMUNITION                               POSS AMMO
 DISP: C 12/19/88 FILE (7 3787B)                        STATUS: C   WPD:


RRAIGNMENT: (081)
 ARG-DATE: 09/20/88 PD:    COURT: BOSTON MUNICIPAL JURY OFDKT#:       886310
 OFF:  KNOWINGLY REC STOLEN PROP      MV                RSG
 DISP: C 12/19/88 2YR CMTD (7 2572)                     STATUS: C   WPD:


RRAIGNMENT: (082)
 ARG-DATE: 09/20/88 PD:    COURT: BOSTON MUNICIPAL JURY OFDKT#:       886498
 OFF:  POSS OF AMMUNITION                               POSS AMMO
 DISP: C 12/19/88 DISM (7 3787A)                        STATUS: C   WPD:


RRAIGNMENT: (083)
 ARG-DATE: 06/07/88 PD:    COURT: DORCHESTER DISTRICT    DKT#:    8807CR3787A
 OFF:  POSS OF AMMUNITION                               POSS AMMO
 DISP: C 8/30/88 FJ                                     STATUS: C   WPD:


RRAIGNMENT: (084)
 ARG-DATE: 06/06/88 PD:    COURT: DORCHESTER DISTRICT    DKT#:    8807CR4834A
 OFF:  POSS TO DISTRIBUTE CLASS D                       CSA POSS DIST D
 DISP: C 8/30/88 FJ                                     STATUS: C   WPD:


RRAIGNMENT: (085)
 ARG-DATE: 04/05/88 PD:    COURT: DORCHESTER DISTRICT    DKT#:    8807CR2572A
 OFF:  KNOWINGLY REC STOLEN PROP      MV                RSG
 DISP: C 8/30/88 G 2YRS CMTD APP                        STATUS: C   WPD:

**095**

RRAIGNMENT: (086)

DISP: C 12/19/88 2YR SPS 1YR CMTD PROB 3/6/91 (@7 7770)   STATUS: C   WPD:
      TERM


RRAIGNMENT: (087)
 ARG-DATE: 10/20/87 PD:          COURT: DORCHESTER DISTRICT          DKT#:     8707CR7770A
 OFF:   KNOWINGLY REC STOLEN PROP        MV          RSG
 DISP: C 11/17/87 SPS 1YR CMTD 11/16/88 APP          STATUS: C   WPD:
       C 3/6/91 TERM


RRAIGNMENT: (088)
 ARG-DATE: 02/05/87 PD:          COURT: DORCHESTER DISTRICT          DKT#:     87CR0775
 OFF:   POSS TO DISTRIBUTE CLASS D          CSA POSS DIST D
 DISP: DF 11/17/87 D/R NG          STATUS: C   WPD:


RRAIGNMENT: (089)
 ARG-DATE: 02/03/87 PD:          COURT: DORCHESTER DISTRICT          DKT#:     87CRO775
 OFF:   POSS DANGEROUS WEAPON          POSS DW
 DISP: C 3/26/87 D/R NG          STATUS: C   WPD:


RRAIGNMENT: (090)
 ARG-DATE: 12/22/86 PD:          COURT: BOSTON MUNICIPAL JURY OFDKT#:          866959
 OFF:   POSS TO DISTRIBUTE CLASS D          CSA POSS DIST D
 DISP: C 2/12/87 SPS 45DA CMTD 2/9/89 (@7 86-7545)12/8/88 STATUS: C   WPD:
       CMTD


RRAIGNMENT: (091)
 ARG-DATE: 11/10/86 PD:          COURT: DORCHESTER DISTRICT          DKT#:     86CR7545
 OFF:   POSS TO DISTRIBUTE CLASS D        W/I          CSA POSS DIST D
 DISP: C 12/8/86 G 1YR CMTD APP          STATUS: C   WPD:


**** ***** ***** **** END OF ADULT APPEARANCES ***** ***** ***** *****

EQUESTED BY: DECAMPBELL
OMPLETED BY: CAMPBELL, DANIEL
       AGENCY: US ATF - BOSTON

```
GENCY:
FBI
ND.>-<
JIS 649679   03/25/2005 1503   S0753/6028.
L.
R.WVFBINF00
3:05 03/25/2005 15176
3:05 03/25/2005 10761 MAATFBSS0
XT
DR/2L01
TN/RUDNICKI
```

********************** CRIMINAL HISTORY RECORD  ***********************

ata As Of                 2005-03-25

************************** INTRODUCTION  ****************************

his rap sheet was produced in response to the following request:

BI Number                 232201LA0
urpose Code               C
ttention                  RUDNICKI

he information in this rap sheet is subject to the following caveats:

his record is based only on the FBI number in your request-232201LA0.
ecause additions or deletions may be made at any time, a new copy
hould be requested when needed for subsequent use. (US; 2005-03-25)
ll arrest entries contained in this FBI record are based on
ingerprint comparisons and pertain to the same individual. (US;
005-03-25)
he use of this record is regulated by law. It is provided for official
se only and may be used only for the purpose requested. (US;
005-03-25)

************************** IDENTIFICATION  ****************************

ubject Name(s)

EYES, REYLANDO
EYNALDO, RISE    (AKA)
EYES, REYNALDO   (AKA)
ISE, RAY   (AKA)
ISE, REYLANDO   (AKA)
ISE, RAYLANDO   (AKA)
ISE, RAYNALDO   (AKA)

ubject Description

BI Number
32201LA0
ocial Security Number
12467773

| ᴇx | Race | |
|---|---|---|
| ale | Black | **097** |

| ᴇight | Weight | Date of Birth |
|---|---|---|
| '00" | 175 Pounds | 1969-05-13 |

lack (1990-01-29)        Brown (1990-01-29)        2110071120185708101S (FPC)
             RS RS RS RS WU LS AU LS LS LS (Other)


cars, Marks, and Tattoos
ode                      Description, Comment
, and Images
CIC                      SC R ARM; SCAR ON RIGHT ARM (WVFBINF00)
CIC                      SC BACK; SCAR ON BACK (WVFBINF00)
CIC                      SC UR ARM; SCAR ON UPPER RIGHT ARM (WVFBINF00)


lace of Birth
A


hoto Images
ype
ther                     Arresting agency has photo associated with
                         arrest date of 1990/01/01 (MA0130100)
ther                     Arresting agency has photo associated with
                         arrest date of 1996/09/16 (MA009015C)
ther                     Arresting agency has photo associated with
                         arrest date of 2002/03/25 (MA0130100)
ther                     Arresting agency has photo associated with
                         arrest date of 2003/10/04 (MA0130100)
ther                     FBI has one photo associated with arrest date
                         of 2003/10/04 (WVFBINF00)
ther                     Arresting agency has photo associated with
                         arrest date of 2005/02/27 (MA0130100)
ther                     FBI has one photo associated with arrest date
                         of 2005/02/27 (WVFBINF00)


************************* CRIMINAL HISTORY *************************

============================= Cycle 001 =============================
arliest Event Date       1990-01-01
-------------------------------------------------------------------
rrest Date               1990-01-01
rrest Case Number        349718
rresting Agency          POLICE DEPARTMENT BOSTON; MA0130100;
ubject's Name            REYES, REYLANDO
harge                    01
   Charge Description    AB DW
            Severity     Unknown

============================= Cycle 002 =============================
arliest Event Date       1996-09-16
-------------------------------------------------
-------------------------
rrest Date               1996-09-16
rrest Case Number        W61271
rresting Agency          MA CORR INST WEST CONCORD; MA009015C;
ubject's Name            REYES, REYNALDO (AKA)
harge                    01                                        **098**
   Charge Description    UNLAWFUL DIST OF CLASS B CONTROLLED SUBST
            Severity     Unknown
-------------------------------------------------------------------
ourt Disposition         (Cycle 002)

ourt Agency           NOT-KNOWN
harge
        Offense Date   1996-09-16
     Charge Description  UNLAWFUL DIST OF CLASS B CONTROLLED SUBST
            Severity   Unknown
----------------------------------------------------------------
entencing             (Cycle 002)
entencing Agency      NOT-KNOWN
            Sentence  2 YEARS AND 1 DAY CONVICTION/CONFINEMENT


============================ Cycle 003 ============================
arliest Event Date    2002-03-25
----------------------------------------------------------------
rrest Date            2002-03-25
rrest Case Number     1993119172
rresting Agency       POLICE DEPARTMENT BOSTON; MA0130100;
ubject's Name         REYES, REYLANDO
harge                 01
     Charge Description  OPERATING AFTER REVOCATION OR SUSPENSION
            Severity   Unknown
harge                 02
     Charge Description  FAILURE TO STOP FOR A POLICE OFFICER
            Severity   Unknown
harge                 03
     Charge Description  RESISTING ARREST
            Severity   Unknown


============================ Cycle 004 ============================
arliest Event Date    2003-10-04
----------------------------------------------------------------
rrest Date            2003-10-04
rrest Case Number     1993119172
rresting Agency       POLICE DEPARTMENT BOSTON; MA0130100;
ubject's Name         REYES, REYLANDO
harge
        01
     Charge Description  OPERATING AFTER REVOCATION OR SUSPENSION
            Severity   Unknown
harge                 02
     Charge Description  RESISTING ARREST
            Severity   Unknown
harge                 03
     Charge Description  FAILURE TO STOP FOR A POLICE OFFICER
            Severity   Unknown


============================ Cycle 005 ============================
arliest Event Date    2005-02-27
----------------------------------------------------------------
rrest Date            2005-02-27
rrest Case Number     1993119172
rresting Agency       POLICE DEPARTMENT BOSTON; MA0130100;
ubject's Name         REYES, REYLANDO
harge                 01
     Charge Description  OPERATING AFTER REVOCATION OR SUSPENSION
            Severity   Unknown
harge                 02
     Charge Description  POSSESSION OF CLASS B, DRUGS
            Severity   Unknown
harge                 03

099

Charge Description  UNLAWFUL POSSESSION OF AMMUNITION

Severity Unknown

harge                 04
    Charge Description  POSSESSION OF CLASS D, DRUGS
              Severity  Unknown

harge                 05
    Charge Description  POSSESSION W/I TO DISTRIBUTE, CLASS B, DRUGS
              Severity  Unknown

*********************** INDEX OF AGENCIES ************************

gency               FBI-CJIS DIV-CLRKSBG CLARKSBURG; WVFBINF00;
ailing Address       1000 CUSTER HOLLOW RD
                    CLARKSBURG, WV 26306

-----------------------------------------------------------------------

gency               POLICE DEPARTMENT BOSTON; MA0130100;
ailing Address      ROOM 149-SOUTH 1 SCHROEDER PLAZA
                    BOSTON, MA 021202014

-----------------------------------------------------------------------

gency               MA CORR INST WEST CONCORD; MA009015C;
ailing Address
    965 ELM STREET PO BOX 9106
                    WEST CONCORD, MA 017429106

  * * END OF RECORD * * *

Document removed due to personal identifiers.